### MINOT and Another *v.* MITCHELL.

TRUSTS.—*Sheriff's Sale.*—A person cannot be treated as a trustee, who, without fraud, purchases real estate at a sheriff's sale with his own money, and takes the title in his own name, upon a verbal agreement to hold it for the benefit of the execution debtor.

PRACTICE.—*Appeal.*—*Unavailable Error.*—An erroneous instruction to the jury cannot, on appeal, be made available as error by a party on whose motion it was given.

APPEAL from the Noble Circuit Court.

The appellants, Jane and Mary M. Minot, sued John

Mitchell, the appellee, and Charles S. Mitchell, alleging, in substance, in their amended complaint, that in the spring of 1855, Samuel Minot, the husband of said Jane and father of said Mary M., became embarrassed in business and unable to pay his debts, many of which had then passed into judgments; that he applied to his friend, William Mitchell, since deceased, father of the defendants, who entered himself replevin bail for the stay of execution on all the judgments on which the period of stay had not expired, amounting to about six thousand dollars; that said Samuel was then the owner of certain real estate described, of the value of twenty-five thousand dollars, upon which the sheriff had levied an execution amounting to three thousand two hundred and twenty-six dollars and thirteen cents; and said real estate was then advertised for sale; that said William agreed that he would bid in said property for said Samuel, at the sheriff's sale, in his own name, pay the purchase money, and hold said land in trust as security for the money advanced by him in the purchase thereof, and also to secure him as replevin bail upon said judgments; that it was agreed that said Samuel should retain possession of said land, and make sales thereof as fast as the same could be done, the said William to make conveyances and receive the purchase money, and apply the same in payment of the money so advanced by him, and the judgments so replevined by him, the residue to be reconveyed to said Samuel; that said William did, accordingly, on the 13th of May, 1855, bid in said property for said sum of three thousand two hundred and twenty-six dollars and thirteen cents; that by reason of said agreement said Samuel failed to attend said sale, or to make further exertions to pay said executions, and by reason thereof other persons were prevented from bidding upon said lands; that soon afterwards said Samuel sold and assigned to said William a large stock of goods, together with his best notes and accounts, all to the amount of about fifteen thousand dollars, to be disposed of in like manner, the residue to be paid

to said Samuel; that one Iddings, who held one thousand four hundred dollars belonging to said Samuel, paid it, by his direction, to said William, upon a like trust; that said Samuel was soon afterwards stricken with paralysis and rendered incapable of transacting any business; that while in this condition he was frequently visited by said William, who pretended great friendship for him, promising to carry him safe through his pecuniary difficulties; that said William, so holding said property in trust, knowing that he could not hold said land by any title derived from said sheriff's sale, for the reason aforesaid, and that in case of said Samuel's death, said Jane would be entitled to one-third of said land, in order to cheat and defraud the plaintiffs, about the 6th of March, 1856, without consulting said Samuel or his wife, procured a general warranty deed to be written, conveying said land to him for the nominal consideration of one thousand dollars, and demanded of said Jane that the same should be executed by her and the said Samuel, urging as a reason therefor, that said Samuel was incapable of attending to business, was liable to die at any moment, and in case of his death, he, said William, would be greatly embarrassed on account of having become his surety; that the estate would go into the hands of an administrator, and be squandered; that he knew more about Samuel's business than any one else, but that purchasers were afraid of sheriff's titles; that if they would execute the deed he could sell the property at a fair value, and would sell enough to pay the debts and save something for the family; that said Jane, believing these representations, and ignorant of her rights, executed said deed, and procured her husband to execute it, but that nothing was paid by said William in consideration therefor, and that said Samuel retained possession and enjoyed the profits of said property as before, and exercised acts of ownership over it, with said William's knowledge and consent; that the representations of said William were false and fraudulent in this: that at the time of the execution of said deed the said William had in his

hands of the avails of said property of said Samuel enough and more than enough to pay him for all the money advanced by him for said Samuel, and to pay all of said Samuel's debts, for which the said William had become surety, and there was no necessity for the sale of any of said lands for the payment of said debts; that on the 31st of August, 1857, the said Samuel died, intestate, leaving the said Jane, his widow, and the said Mary M., his only heir at law; that on the 7th of April, 1857, the said William procured the sheriff's deed for said land; that all the money advanced by said William, and all the debts for which he had become surety, were paid out of the proceeds of the property before the making of said sheriff's deed; that said William, in his lifetime, received from said stock of goods and notes fifteen thousand dollars, from said Iddings fourteen hundred dollars, and from sales of said lands twenty-three thousand dollars, being in all twenty-eight thousand four hundred dollars more than the amount advanced by said William, the judgments stayed, and all debts paid by him; that said William has since died, intestate, leaving the said John and Charles S. Mitchell his only heirs at law, to whom all the unsold portions of said trust estate, and other real and personal estate of the value of five hundred thousand dollars descended; that since the death of said William defendants have sold portions of said trust estate, but what portions, to whom sold, and for what price, plaintiffs are not informed; that plaintiffs have demanded of the defendants a settlement of said trust estate, payment of the amount due the plaintiffs, and a reconveyance and the possession of all said trust lands not conveyed by defendants or their ancestor, which they refuse; that since the commencement of this suit, said Charles S. Mitchell has died, intestate, leaving said John his sole heir at law. Prayer for an account, for judgment for the sum found due, for possession of the undisposed portion of said lands, and other proper relief. A bill of particulars of "moneys received by William Mitchell, as trustee

for Samuel Minot, from the avails of the trust estate," is filed with the complaint.

The defendants answered in several paragraphs: by the general denial; by denying the fraud charged, and alleging that the trust set up was not created in writing; and by alleging that Mitchell, in his lifetime, fully executed the trust, and settled the same with Minot.

Various other paragraphs setting up the statute of limitations were filed, to which demurrers were overruled, and the plaintiffs excepted and filed replies—a general denial by both, and infancy by Mary M.

On the trial before a jury, the plaintiffs offered to introduce Jane Minot, one of the plaintiffs, as a witness, to prove the allegations of the complaint, but the court held that she was incompetent to prove any matter which occurred prior to the death of William Mitchell, and refused to let her testify as to any such matters. The plaintiffs then offered to prove by said Jane that the first information or suspicion she had of any fraud or improper conduct on the part of William Mitchell, in relation to the matters charged in the complaint, was after the death of said William; but the court refused to permit her to testify as to such matters. To these rulings the plaintiffs excepted.

The court, at the defendant's request, instructed the jury, in substance, as follows: After setting out the allegations of the complaint and indicating that they must be proved as alleged, the court charged that "if Mitchell merely intended the money advanced as a loan and took the sheriff's deed simply as a security for this and his liability as replevin bail, then the sheriff's deed would operate simply as a mortgage, and Minot or his heirs might redeem; but if the sheriff's deed was, as alleged in the complaint, a mortgage, the deed of Minot and wife, of the 6th of March, 1856, would convey to Mitchell the equity of redemption of Minot and Mrs. Minot's contingent interest, and thus make Mitchell's title perfect, unless that deed was void, not for want of consideration, but void for the precise misrepresen-

tations alleged in the complaint and the incapacity of Minot there stated; that if Mitchell bought the land at sheriff's sale in pursuance of a verbal understanding that he would dispose of it and with the proceeds pay all Minot's debts, you should find for the defendant; for in such case the land could not be held as alleged in the complaint. If Mitchell bought the land, not for the purpose of selling it and paying all Minot's debts, but simply to secure himself, then you will inquire whether the deed of March 6th, 1856, was obtained by Mitchell's fraud, as charged. If it contains covenants of warranty, and purports to have been made in consideration of $1,000 paid by Mitchell to the grantors, it can only be attacked for the fraud alleged in the complaint. The plaintiffs are estopped to allege anything against that deed unless fraudulent. Mitchell had a right to buy Minot's equity and Mrs. Minot's interest, and, if this deed was not void for fraud, it conveyed all the interest of Minot and wife in the land. The burden of establishing fraud in this deed is on the plaintiffs. If the deed purports to have been made in consideration of $1,000, the recital is *prima facie* evidence of its payment, and unless disproved by the plaintiffs must control you on that point. For the purpose of raising a trust on this deed the plaintiffs would not be permitted to disprove such payment. The fourth paragraph of the answer denies the fraud charged and denies that the trust was created in writing. This paragraph is pleaded to the whole action, and as there is no proof that the trust was created in writing, your verdict must be for the defendant, unless the fraud charged has been proved to your satisfaction Fraud is never presumed, but must be proved by the party who asserts it."

The plaintiffs excepted to the giving of this instruction.

There was a general verdict for the defendant with special findings in answer to interrogatories. The court overruled motions by the plaintiffs for a new trial and for a *venire de novo* and rendered judgment on the verdict, to all

which the plaintiffs excepted. The evidence is not in the record.

RAY, C. J.—On the trial, the court, on the motion of the appellants, the plaintiffs below, by an instruction, limited the recovery in this action, in any event, to the lands still undisposed of and the proceeds of the lands sold by Mitchell or his heirs since the death of Minot. If, therefore, any error was committed by the court which alone affected the question of a recovery for the personal property, such error would not be available here.

So far as the real estate is involved, the complaint does not make Mitchell a trustee. His purchase at sheriff's sale was with his own money, and no fraud is charged in such purchase. It is not alleged that he prevented others from bidding on the property by representing that he was purchasing for the benefit of Minot.

It is a simple averment of a verbal agreement that Mitchell should purchase the property at sheriff's sale and take the title in his own name, he agreeing to hold it for the benefit of Minot. According to the complaint he did so purchase. The legal title vested in him without fraud. Can he be treated as a trustee? The rule is thus stated: "But in no case will the grantee be deemed a trustee, if he used no fraud or deceit in getting his title, although he verbally promised to hold the land for the grantor." Browne Statute Frauds, 92, § 95.

This practically ends the case. The rulings of the court upon the paragraphs of the answer pleading the statute of limitations are of no importance. The parapraphs were sustained, but no such issue was submitted to the jury by the charge of the court, as the transaction was treated as a mortgage, which certainly is a most favorable view for the appellants. The jury found that there was no fraud in the purchase at sheriff's sale, and that the subsequent deed was made without fraud and for the purpose of making Mitchell's title absolute.

Upon the exclusion of the evidence of Jane Minot, the

widow of the ancestor of the heirs who sue, it is sufficient to say that she was not offered to prove fraud in the purchase at sheriff's sale, nor would such evidence have been proper, or relevant to the averments of the complaint.

The judgment is affirmed, with costs.

*W. H. Coombs,* and *W. H. H. Miller,* for appellants.

*J. L. Worden* and *J. Morris* for appellee.