## JOHN EASTMAN v. SAMUEL P. CURTIS.

### January Term, 1895.

*Master and servant. Falling elevator. Contributory negligence. Duty of master to provide safe machinery.*

1. Where a party by his requests to charge suggests the use of a word, he cannot afterwards except to its use in the sense suggested.

2. *Held*, that the use of the phrase "risks that are due to the master" was not, in view of the context of the charge, error as being too indefinite.

3. Where there is evidence in the case of contributory neglect, the court is, upon request, bound to instruct the jury upon that subject.

4.  The plaintiff was injured by the falling of the defendant's elevator. The jury was told that "the plaintiff, being the employee, was not bound to inspect the elevator, but had a right to rely on the defendant having put in a proper elevator for his use." *Held*, correct as applied to the facts in this case.

5.  *Held*, that the evidence of the plaintiff tended to show negligence in the defendant.

Case for the negligence of the defendant. Plea, the general issue. Trial by jury at the September term, 1893, Rutland county, TYLER, J., presiding. Verdict and judgment for the plaintiff. The defendant excepts.

The eviden ce on the part of the plaintiff tended to show that the defendant was a dealer in flour, feed, coal, baled hay and grain, on Evelyn street in the village of Rutland; that the plaintiff had worked for the defendant in and about his store about nine years, and had quit that employment on or about the first day of January, A. D. 1891; that about the middle of October, 1891, the plaintiff again entered into the employment of the defendant temporarily, and that during the interval while the plaintiff was not in the employ of the defendant, the roof of the store building had been raised so as to make the building three stories high instead of two, and that a hand elevator had been put in for raising and lowering freight from one floor to another, and that an opening had been cut in the three floors of the building, so that the platform or car of the elevator passed freely from the basement or cellar to the third floor; that the weight of the car was balanced by a weight of iron that ran in a box from the cellar, and said weight and car were connected together by a wire rope running over a sheave wheel; that upon the shaft with said sheave wheel was a spur wheel, that was geared into a pinion wheel; that upon the same shaft with the pinion wheel was the large wheel over which passed a rope, and by pulling upon this rope the elevator car was moved up and down; that the rope by which the machine

was worked passed through the floor some eight or ten inches from the edge of the opening through which the car moved; that in letting down loads from the upper floors the descent of the load was controlled by a brake, which was applied to the outer circumference of the same wheel that the rope acted upon, and this brake was controlled by a rope attached to one end of the brake, and passing down through the three floors.

The plaintiff also introduced evidence tending to show that after he had been at work there on the last occasion about six weeks, on the twenty-seventh day of November, 1891, the plaintiff received an order in the afternoon for five barrels of flour that were on the upper or third floor of the building, and that the plaintiff and Herbert E. Curtis, a son of the defendant, and Luke Kelley went up to the third floor to get the flour; that they put the five barrels of flour upon the elevator; that young Curtis and Kelley got upon the elevator with the flour and started it down, leaving the plaintiff standing on the floor; that after the elevator started down some four or six inches, the plaintiff put his hands on the chime of one of the barrels and stepped upon the elevator; that as the plaintiff stepped upon the elevator young Curtis cried out that the rope was breaking, and the elevator with the five barrels of flour and the plaintiff and Kelley fell or ran rapidly to the bottom of the cellar and struck with great force, and the plaintiff received the injuries for which his suit is brought; that young Curtis was left hanging by the brake rope.

The evidence of the plaintiff further tended to show that when he went back to work for the defendant in October, 1891, the elevator was in operation, and that the plaintiff in connection with the other men in the store used it from day to day, and that the plaintiff oiled it as it needed such care, and that all the machinery and gearing was open to view and could be seen from the floor, and in oiling it the

plaintiff had to go up to where the gearings were. The plaintiff further testified that he was not a mechanic, and had had no experience with machinery.

The plaintiff introduced various men accustomed to the building and use of machinery, whose testimony tended to show that the machinery was too light for the use to which this elevator was put, and that it was not properly set, in that the arbors upon which the various wheels were attached were out of level, and the bearing too far from the wheels; and the gear of the spur wheel and the pinion wheel worked loosely. Witnesses were also introduced who testified that while the plaintiff was confined to his bed the defendant visited him, and remarked that he was sorry that the plaintiff was hurt, and sorry he did not have the elevator tested, as it might have prevented the accident, and that he made the same remarks on other occasions.

The testimony on the part of the plaintiff further tended to show that after the accident two cogs or teeth were broken on the spur wheel, and the spur wheel itself broken, and two or three cogs on the pinion wheel, and that the wire rope connecting the elevator with the weight or counterpoise was broken.

The testimony of the plaintiff further tended to show that although said elevator was designed for the transportation of freight and merchandise from floor to floor, that the defendant had not given him any caution or warning about riding upon it, and that it was the habit and custom of the plaintiff and the other employes and the customers of the store to ride up and down upon the elevator, and that the defendant had knowledge of such custom, and that upon one or more occasions the defendant himself had rode up and down upon the elevator. The plaintiff also testified that when he went to work the stairs from the second to third floors were not there, but that they were put in a few days before the accident. The testimony of plaintiff

further tended to show that in absence of defendant, his son Herbert had charge of the business at the store when he was there, and that he was foreman and manager.

The evidence on the part of the defendant tended to show that said elevator was designed to be operated from the floor, and was for the transportation of merchandise only, and was not a passenger elevator; and that while it could be operated by a person standing upon the platform of the car, it was at great disadvantage, and could be much more readily done from the floor. The defendant further testified that the elevator was of an improved pattern—one in common use, and that he purchased it of reputable dealers, who placed it in position ready for work, and that the dealers sent skilled mechanics for the purpose of putting it in place; that after it was ready for delivery, and acceptance by the defendant, a load of eight barrels of flour, which was larger than any loads he should be liable to want to use upon it, was put on it, and run up and down several times in his presence, and that so far as he could see the elevator was a perfect machine and worked well; that within two or three days after the elevator was completed the defendant stepped upon it, and rode to the upper floor; that just before he reached the floor, he reached over to take hold of the brake rope for the purpose of stopping it, and caught one toe between the elevator and floor, and was thrown off and badly injured. That he had no one to take charge of his business, and after being confined to his house for a day or two, sent for the plaintiff and engaged him to take charge of the business at the store; that the plaintiff was a good workman (a fair mechanic) and a man of more than ordinary observation and experience, and that while talking with him about said employment, the defendant said to the plaintiff that he must be careful in the use of the elevator, as his experience had shown him that it was not a good thing to stop with his foot, and that men better be told

not to ride upon it, and that the defendant directed the plaintiff to take charge of the business at the store, and direct the other men in their duties.

The defendant denied having said to the plaintiff, or in his hearing, that he was sorry the elevator had not been tested, and said that he considered the operation of it by the mechanic who put it in as a sufficient test for all practical purposes, but that he did say that he was sorry that the plaintiff was injured.

The defendant also introduced expert mechanics, who had examined the elevator since the injury, and who testified to its sufficiency, and gave their opinion as to the manner of the accident; and their testimony tended to show that the breakage of cogs upon the spur wheel and the pinion wheel, and of the rope aforesaid, all took place at the time the elevator struck the bottom of the cellar, and that none of them were broken until that time.

The evidence on the part of the defendant further tended to show that at the time of the accident the plaintiff and the other men named by him were upon the upper floor, and when the flour was loaded the plaintiff started to walk down the stairs; that Mr. Kelley called out to him to come back and ride down upon the elevator; that the plaintiff replied that he dare not do it, but, upon being challenged to come back, did come back, and got onto the elevator, and that it was started down; that the three persons upon it were laughing and talking and joking, and that by reason of the load and the brake being thrown off suddenly and not applied to regulate it, it ran with great rapidity, or fell, to the bottom of the cellar, where the injury to the plaintiff occurred. Herbert Curtis also testified that when he was left hanging on the rope at the time of the accident he went down the rope to second floor, and swung off onto that floor.

At the close of the evidence the defendant moved the court

to direct a verdict.    The motion was overruled, and the defendant excepted.

The opinion states the facts material to the other exceptions.

*J. C. Baker* for the defendant.

The plaintiff assumed the ordinary and visible risks attendant upon the use of this elevator, and there were no others, since every part of it was simple and exposed to view.    *Rooney* v. *Cordage Co.*, 161 Mass. 153; *Kleinest* v. *Kemhardt*, 160 Mass. 230; *Moulton* v. *Gage*, 138 Mass. 390.

For this reason the court should have directed a verdict for the defendant.    *Ragan* v. *Rallway*, 97 Mich. 265; *Railroad* v. *State*, 75 Md. 152; *Daniels* v. *Railroad*, 36 West Va. 397; *Worthington* v. *Railroad*, 64 Vt. 107; *Dumas* v. *Stone*, 65 Vt. 442.

The use of the word "contract" in the charge was clearly misleading.    There was no contract in this case between plaintiff and defendant.    *Carbine* v. *Railway*, 61 Vt. 348; *Latremouille* v. *Railway*, 63 Vt. 336; *Rooney* v. *Cordage Co.*, 161 Mass. 153.

The court should have instructed the jury on the subject of the plaintiff's contributory neglect.    *Willard* v. *Pinard*, 44 Vt. 34; *Westmore* v. *Sheffield*, 56 Vt. 239; *Donahue* v. *Ins. Co.*, 56 Vt. 374.

The charge of the court, that the plaintiff was not bound to inspect the elevator, was erroneous in this case, for the whole machine was open to the plaintiff's observation, and while not bound to seek out hidden defects, he was bound to see what was before his eyes.    *Wagner* v. *Chemical Co.*, 147 Penn. St. 475; *Wormell* v. *Railroad*, 79 Me. 397; *Kean* v. *Rolling Co.*, 66 Mich. 277; *Gibson* v. *Railway*, 63 N. Y. 449; *Kohn* v. *McNulty*, 147 U. S. 238; *Davis* v.

*Railroad*, 152 Penn. St. 314; *Fisk* v. *Railroad*, 72 Cal. 38; *Light Co.* v. *Murphy*, 115 Ind. 566.

George E. Lawrence and Butler & Moloney for the plaintiff.

The exception of the defendant to the failure of the court to comply with his requests, and to the charge of the court on the subject of those requests, is too vague and general. *Goodwin* v. *Perkins*, 39 Vt. 598; *Knight* v. *Smythe*, 37 Vt. 520; *State* v. *Nulty*, 57 Vt. 543.

The plaintiff was not bound to inspect this elevator, and the charge to that effect was correct. Wood, Mas. & Ser., p. 763, s. 376; *Muldowney* v. *Railroad Co.*, 36 Iowa 462; Shear. & Redf., Neg., s. 217; *Porter* v. *Hannibal & C. Rd. Co.*, 71 Missouri 66.

THOMPSON, J.   I.   The motion to direct a verdict for the defendant was properly overruled, as the evidence introduced by the plaintiff tended to show a cause of action.

II.   Among other things the court below instructed the jury that

"If the defendant had no actual notice of defects in the machine, and no actual fault existed on his part, then there is no contract or undertaking on his part that the machine was free from defects, or that it could be safely used by the plaintiff. If there was no contract or undertaking on his part that the machine could be safely used by the plaintiff, the plaintiff must be taken to have assumed the risk of such defects as were not visible to the defendant, or which with reasonable care ought to have been discovered by him. The servant assumes those risks which are ordinarily incident to his employment, but he does not assume those risks that are due to the master or employer, unless he has or ought to have known of them himself."

The defendant contends that there was no evidence tending to show any contract between the plaintiff and the

defendant that the elevator could be safely used, and that therefore the use of the word "contract" in this part of the charge misled the jury. This instruction to the words "If there was no contract" is almost a literal compliance with the defendant's third request to charge, in which he uses the word "contract" in the same sense in which it is used by the court. Having put it into the mouth of the court by his request, the defendant cannot now be heard to say that its use was error. *Foster's Exrs.* v. *Dickerson*, 64 Vt. 233; *Tucker* v. *Baldwin*, 13 Conn. 136, 33 Am. Dec. 384; *Minott* v. *Mitchell*, 30 Ind. 228, 95 Am. Dec. 685.

It is also claimed that there is error in this instruction, in that the words "risks that are due to the master" are too indefinite to convey any idea to the ordinary juryman. There can be little doubt but that the learned judge intended to say, and perhaps said, that

"The servant assumes those risks which are ordinarily incident to his employment, but he does not assume those risks that are due to the *neglect* of the master or the employer, unless he has or ought to have known of them himself."

But taking the language as it stands in the exceptions, the phrase "risks due to the master" is not open to the objection urged. From the context it is clear that it was used, and must have been understood in the sense of those risks that belong to the master—that rest upon him. The court had fully and clearly instructed the jury in respect to the duty of the master to furnish safe appliances for the use of the servant while engaged in the master's service.

III. The evidence of the defendant tended to show that contributory negligence on the part of the plaintiff at the time of the accident was a proximate cause of his injury. By his twelfth request the defendant specifically asked the court below to charge upon that subject, but by some inadvertence it omitted to do so, to which the defendant ex-

cepted. He was entitled to have the jury properly instructed on this subject, and in the failure to do so there was error.

IV. The jury was instructed that

"The plaintiff, being an employee, was not bound to inspect the elevator, but had a right to rely upon the defendant having put in a proper elevator for his use."

The defendant admits that under some circumstances this charge would be correct, but contends that in this instance it is erroneous, because it is not appropriate to the evidence.

The defendant testified in substance that sometime prior to the plaintiff's injury, the defendant injured one of his feet while operating the elevator, and in consequence of this injury was unable to attend for some time to his business carried on in his store, and on that account employed the plaintiff to work in the store ; and that when he engaged him he told him that he wanted him to take the entire charge of the business, and see that it went right until he was able to be out, and that plaintiff said he would do so. Prior to the time plaintiff was injured the defendant was able to be out again, and at the time of the injury he was in the store at work in his office. If under his employment, according to the defendant's version of it the plaintiff was vice-principal until the defendant was able to be out, and during that time, as between himself and his principal, was bound to use ordinary diligence, skill and judgment in inspecting the elevator to see that it was in a fit condition for use, yet that duty ceased when the defendant was able to be out, and the plaintiff thereby ceased to be vice-principal. The evidence of the plaintiff tended to show that he was not at any time in charge of the business, but that he was all the time simply an ordinary servant. No evidence was introduced tending to show that the accident occurred on account of the failure of the plaintiff to inspect the elevator during the time the defendant claimed he was vice-principal. Whether the plaintiff entered upon his employment as an ordinary ser-

vant or as vice-principal, he had a right to assume at the time he commenced work that the elevator was reasonably safe, and fit for the use to which it was to be put. The defect in the elevator, if there was any, was claimed to be in the manner in which it was constructed. It is not claimed that either the master or servant actually knew of such a defect prior to the accident. The evidence of the defendant shows that he, knowing all the circumstances attending the construction of the elevator, and the putting it into the store, did not believe any defect nor danger existed. The evidence standing as it did on this phase of the case, it is within the doctrine laid down in *Dumas* v. *Stone*, 65 Vt. 442, and *Houston* v. *Brush & Curtis*, 66 Vt. 331, and it was not error for the court below to give this instruction.

This disposes of all the points made in argument.

*Judgment reversed and case remanded.*