Riverside Development Co. *v.* Hartford Fire Ins. Co.

[62 South. 169.]

1. Pleading. *General issue with notice. Affidavit. Sufficiency. Insurance. Agents. Authority. Unauthorized acts. Ratification. waiver. Code 1906, section 755. Estoppel.*

Under Code 1906, section 755 providing that when a demurrer to a declaration is overruled, a plea shall not be admitted unless defendant makes oath that he had a good defense, setting forth the nature thereof; a sworn plea of the general issue, with notice thereunder, setting forth the nature of the defense is sufficient where the affidavit to the plea refers to such notice.

2. Insurance. *Agents. Authority. Stockholder in corporation.*

An agent authorized to issue insurance policies cannot bind his principal by issuing a policy on property owned by him or in which he has an interest adverse to that of his principal or on property owned by a corporation of which he is a stockholder, and in such case it makes no difference that the rate was a fixed rate and the agent acted in good faith in issuing the policy.

3. Insurance. *Unauthorized acts of agent. Waiver. Estoppel. Ratification.*

The ratification of an invalid act of an agent follows upon a failure to object thereto, only, when the principal has full knowl-

edge of the circumstances which render the act invalid, and a party is not estopped where he does no act to mislead another to his prejudice.

4. INSURANCE. *Unauthorized acts of agent.   Waiver.,*

Where a policy for tornado insurance provided for the appointment of appraisers to appraise the loss and further provided that such appraisal shall affect no other question under the policy, the joining of the insurance company in the appointment of such appraisers, did not waive its right to object to the validity of the policy on the ground that the agent issuing it was a stockholder of the corporation which owned the property insured.

APPEAL from the circuit court of Quitman county.
HON. SAM C. COOK, Judge.

Suit by the Riverside Development Company against the Hartford Fire Insurance Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*P. H. Lowery,* for appellant.

Our contention is that with the overruling of this demurrer the plaintiff should have had judgment.   That the affidavit and plea with notice are not a compliance with section 755, Code 1906.   Therefore, that the court erred in permitting the plea filed as shown by the order on page 25, and in failing to sustain plaintiff's motion as shown on page 31 of the record.   *Robertson* v. *Banks,* 1 S. & M. 666; *Tittle* v. *Bonner,* 53 Miss. 578; *Feazell* v. *Soltzfus,* 54 So. 444.

The defendant is probably not in a position to question the correctness of the court's ruling on the demurrer as the appeal is by the plaintiff only, but whether or not this is correct, the ruling of the court was clearly right.

This brings us to the real question upon which the defendant obtained its judgment.

Mr. W. A. Cox, the defendant's agent, who signed this policy of insurance with the plaintiff, was a stockholder in the plaintiff corporation.

Our contention is that this did not make the policy void, or voidable for two reasons: First, being a stockholder did not disqualify him from issuing the policy as agent of the defendant; second, the policy, while countersigned by the agent is also signed by the president and secretary of the company, and was actually reported to the company and accepted by it many months before the damage.

We further contend, third, that even if the agent was so interested in the property as to make his act not binding upon the company, and if the reporting of the policy to the company and acceptance by it did not make it the company's act and not the agent's, the company ratified the act by holding the premium and not offering to return it and not repudiating the act of the agent, but rather by accepting his act after it had notice that this agent had stock in the corporation which owned the property.

With reference to the first reason above stated we contend that a stockholder in a corporation may insure the property of the corporation against fire even, where he is neither a director, nor an officer.

In the case of *Greenwood Ice Co.* v. *Insurance Co.,* 72 Miss. 46, the court holds that a stockholder, who is a director and vice-president of a corporation, cannot insure the property of the corporation against fire as agent of an insurance company and bind the company; and in *Wildberger* v. *Insurance Company,* 72 Miss. 338, the court holds that a policy issued by a receiver on a stock of goods in his hands in a company in which he is agent does not bind the company. In both of these cases the insurance agent is also agent for the insured.

In the opinion in the *Wildberger case,* Judge WHITFIELD lays some stress upon the fact that the receiver has an interest in the property to the extent of his commissions but I take it that this is really not the reason for the rule as indicated by the concurring opinion of Judge

Cooper. It is noticeable too, that in both of these cases the property was burned before the issuance of the policy was reported to and accepted by the company, making it the act of the agent only. I have found no case and no text-book authority holding that a stockholder in a corporation may not, as agent of the insurance company insure the property of the corporation in the company for which he is agent.

Mr. Ostrander in his work on insurance, second edition, discussing the *Greenwood Ice Co. case,* page 157, expressly states that being a stockholder would not make it improper on the ground of antagonistic interests for the agent to insure property of the corporation. I have found nothing to the contrary.

The different relations of a mere stockholder and a director in a corporation is admirably discussed in *Bird Coal Co.* v. *Humes* (Pa.), 37 Am. St. Rep. 727. The property of the corporation is not the property of the stockholder, and he has neither legal or equitable title to it. Am. & Eng. Ency. of Law (2d Ed.), 899.

The stockholder is not the agent of the corporation and there is no fiduciary relation between him and the corporation, or its stockholders. Ib. 900 and 901.

He may contract with the corporation, enter into business competition with it and sue it. Ib. 957 and 958. I see no just reason why he may not insure its property.

There is still another reason why this policy is valid, even though the agent should be held to be the agent of the corporation, or interested in the property insured, viz.: His duties in issuing this policy were purely clerical and did not involve any matters of judgment or discretion as is the case of insurance against fire. In fire insurance the location of the property, the character of the tenant, the character of the property and many other questions go to make it insurable or noninsurable, desirable or undesirable as a risk but this is not the case with tornado insurance. In fire insurance there is much for

the agent to consider while in tornado insurance it is simply a matter of paying the premium and issuing the policy. There are only two rates, viz.: the rates for residences and business property. This is shown by the testimony of the witness, W. A. Cox. The question of desirable or undesirable risks is not involved nor is the question of rate, except as to residences and business property and in this case the business property rate, being the highest, was charged.

It is only where the act of the agent imports discretion that he cannot act for both parties, but this is not the case where there is nothing to call for the exercise of judgment, or skill, or where the agent acts under such definite or specific instructions as to place on him responsibility. Ostrander on Insurance, pages 154 and 155.

The insured of course has nothing to do with the destruction or damage to his property by wind, and there is no reason why the agent might not insure his own property as well as the property of another against damage by wind, even though he is the agent of the company carrying the insurance.

For the second reason above stated, viz.: That the risk had been reported to the company and accepted, this policy was at the time of the wind valid and binding against the company. It is not a case of ratification by the company in which full knowledge might be required but a case of acceptance of the risk by the company. It was not necessary that the company should know all of the stockholders in order to accept, or reject this risk. Had it been insured by some one not a stockholder there would have been no enquiry as to who the stockholders were.

I have referred above to the fact that in the *Greenwood Ice Co. case* and the *Wildberger case,* both reported in 72 Miss., the risk had not been reported to the company and accepted, the fire in both cases having oc-

curred before the report was made to the company. When this report was made to the company, the insurance became the act of the company and not of the agent. I have found no case where the risk had been reported and accepted by the company before the fire occurred, holding that the policy was void because countersigned by an agent who was interested in the property.

Mr. Ostrander, after a full discussion on agency, pages 129 to 206 states among his conclusions as follows: "Risks which a company has accepted and on which it has paid the agent his commissions are beyond the control of the latter, etc."

Even if this had been a fire insurance policy and the agent had been in fact a part owner of the property, or an officer in the corporation, the company could not have denied its liability for the damages after having accepted the risk when reported to it by the agent.

If the agent of the insurance company in this case was so interested in the property as to make his issuance of the policy voidable and if the issuance of the policy by him involved such degree of judgment and discretion as to prevent his representing both parties and if the acceptance of the policy, when reported, without full knowledge of the interests of the agent in the property, did not make this a valid and binding contract of insurance, still as stated in the third reason above, the act of the agent was ratified by his company with full knowledge of all the facts and that he was a stockholder in the company insured.

It is shown by the testimony of Mr. Cox, the agent, and by his letter that as early as September 24, 1910, the company had notice that he was a stockholder and of the amount of his stock. That after that, one Mr. Cecil Davis, the agent of the company, seeking to adjust this loss came to Marks and discussed with him the fact that he was a stockholder, and not only did not repudiate his act, or offer to return the premium to the insured but

actually made that a ground for his anxiety to settle the claim. This was an affirmative ratification of his act. Mr. Cox says: "He stated that he saw I was a stockholder of the company. I told him I was. He said he would like to settle it on my account."

It is shown also that after a suit was brought to the February court, 1911, and was fought out solely on the ground that there had been no appraisement of the damages, with still no question on the validity of the policy and no offer to return the premium to the insured but actually made that a ground for his anxiety to settle the claim. This was an affirmative ratification of his act. Mr. Cox says: "He stated that he saw I was a stockholder of the company. I told him I was. He said he would like to settle it on my account."

It is shown also that after this a suit was brought to the February court, 1911, and was fought out solely on the ground that there had·been no appraisement of the damages, with still no question on the validity of the policy and no offer to return the premium.

Afterward, from March 7th, to April 14th, there was a desperate effort on the part of the insured to get an adjustment of this claim without a suit and many letters passed between the company and the adjuster, with never a breath nor intimation that this policy was void, or voidable because of the interest of the agent in the property insured, and never an offer to return the premium.

Then this pending suit was instituted and on June 8, 1911 for the first time, the defendant in its notice filed with its plea, suggested that W. A. Cox was a stockholder in plaintiff company and that the policy was void.

The defendant still clings to its little five dollars premium with never an offer to return it until it seems to have waked up to the necessity of returning it in case it sought to avoid the policy, when it filed an additional plea, tendering back the premium and interest.

Thus, the defendant both affirmatively and negatively has ratified this contract of its agent, with full knowledge of all the facts. Mr. Ostrander, page 159 says:

"If the principal when coming to an understanding of the situation ratifies the act of the agent, the policy will then become a valid contract; and it has been held that, on the facts being made known to the company, it would be its duty to speak and if it repudiated the insurance the premium must be returned. Failing to act promptly the company would be liable should loss occur. Whether the policy is to be treated as void, or only voidable, good faith certainly would compel the insurer to return the premium if on learning the facts he is unwilling to continue the engagement."

On the same page, quoting from a Texas case we find this: "The court held that it was incompetent for an agent to act when his own interest was in conflict with that of the principal but that a policy so issued was only voidable, and that it was the duty of the company on learning the facts that their agent was the person insured to at once repudiate the insurance and offer to return the premium, and failing so to do, they would be estopped to deny the validity of the policy." Citing *Hanover Fire Ins. Co.* v. *Shrader* (Tex. Civ. App.), 31 S. W. 1100.

Substantially to the same effect is A. & E. E. of L., 2d Ed. (Tops of pages 1203, 1206 and 1207), vol. 1.

The same principle is affirmed in *Myers* v. *Morgan,* 51 Miss. 21; *Myers* v. *Conner,* 41 Miss. 722, 31 Cyc., pp. 1246-1270 and 1283; *Andrews* v. *Robertson,* 111 Wis. 334, 87 Am. St. R. 870; *Ward* v. *Williams,* 26 Ill. 447, 79 Am. Dec. 385.

I, therefore, most respectfully submit that this policy was valid and binding from the beginning both because the relations of Mr. Cox to the corporation were not such as to make his act insuring the corporation property as agent voidable at the election of the principal and be-

cause the issuance of this particular policy did not involve any such matter of discretion or judgment as to make it voidable even if the agent was interested in the property insured.

Second, because after full knowledge of the facts the insurer ratified the act of the agent, affirmatively by expressing an especial desire to settle on account of his relation to the property insured and by making no objection on this ground for nearly nine months (to wit: from September 25, 1910 to June 8, 1911), during all of which time active negotiations. looking to a settlement of this controversy were in progress; and by retaining the premium paid on the policy, with never a suggestion of returning it until long after the third suit had been brought on the policy, and two weeks after it had pleaded to the merits of the controversy.

*McLaurin, Armistead & Brien,* for appellee.

The defenses asserted to this suit are the general issue; and that W. A. Cox, the agent of the insurance company, was also a stockholder in the appellant corporation, which made the policy void; that the plaintiff had not given the notice of the proof of loss within the fifteen days provided for in the policy, and that if there was any recovery it could only be on a fifty per cent co-insurance basis.   The main questions litigated in this case on the pleadings as now framed are:

1.   It is admitted that W. A. Cox was a stockholder in the appellant company at the time he issued the policy in suit to the appellant.   He was, therefore, interested in the corporation that he insured and occupied the position of having issued a policy to himself with no knowledge of his dual relation given to the insurance company until after the loss.   But it is contended by appellant that even though this is true that it would not make the policy void, because as appellant contends, a stockholder in a corporation who is also an insurance agent, issuing a

policy to the corporation in which the agent is a stock-holder, will not avoid the policy.

2. It is contended by appellant that even if the policy was void by reason of W. A. Cox, the insurance agent, having issued the policy in suit to the Riverside Development Company in which W. A. Cox was a stockholder, that nevertheless the insurance company ratified the policy by asking that the loss be arbitrated.

We will undertake to show that neither one of these positions is well taken. Addressing ourselves now to the proposition that the issuance of a policy by Cox, the agent of the insurance company, to the Riverside Development Company, a corporation, in which Cox, the agent, was a stockholder, will not avoid the policy because Cox was not, an officer of the corporation, we say that that proposition has been settled by our supreme court absolutely on principle as well as by courts of other states. Counsel for appellant in his brief seems to argue this question from the standpoint that Cox must be an officer in the corporation in order to make the policy void; that the ownership of Cox of a small amount of stock would not have such operation. We ask the court in reply to this suggestion, how much stock would a stockholder have to own in a corporation to make the policy void when issued to such corporation by a stockholder who was also an agent of the insurance company? Where would the court draw the line? Would the court say that the stockholder must own a quarter of the stock, or a half of the stock, or two-thirds of the stock to make the policy void? Suppose a stockholder owned seventy-five per cent. of the stock in a corporation or nine-tenths of the stock in a corporation, and such stockholder who issued a policy covering the property of the corporation of which he was a stockholder and also agent of the insurance company issuing the policy, the court can see at once that the very principle of law would be stricken down by such a construction.

105 Miss. 13

Counsel for appellant has misconceived the principle upon which this rule of law is based; that an insurance agent cannot insure his own property or any other property in which he is interested, whether as a partner, joint tenant, tenant in common, or as stockholder in a corporation on the ground, says the law, that it is against public policy. The holdings of the courts on this question nullify these contracts on the ground of public policy and not at all on the quantum of interest owned by a person both agent and assured. In the case of *Spinks* v. *Davis,* 32 Miss., the court lays down the broad rules as to when contracts are void as being against public policy, in the syllabus saying:

"All contracts, the direct tendency of which is to induce fraud and malpractice upon the rights of others, or the violation or neglect of one of two high public duties, the faithful discharge of which is inconsistent, are against public policy and void."

This was a case of an attorney occupying the inconsistent position where the attorney was representing a claim against an estate and was also undertaking to act as administrator of the estate. The court in this case, on p. 155 defines the different duties of the agent in representing different parties to the contract, saying that "Under such circumstances the attorney could not have performed his duty to prosecute the claim, if validity of plaintiff's claim had been doubtful, consistently with his duty to defend the estate against its collection."

The court on page 156 of this case, 32 Miss., says that: "The agreement must, therefore, be condemned as illegal and against public policy, etc."

We invite the court's careful reading of this case as a demonstration of the fact that dual relations cannot be occupied by the same person and it is not to be determined by the small or great interest of the person, but it is bottomed on a violation of public policy. See, also Vol. 3, Am. & Eng. of Law (2d Ed.), 298-299; also

*Arrington* v. *Arrington,* 116 N. Car. 170; *Gooch* v. *Peebles,* 105 N. Car. 411.

The case of *Arrington* v. *Arrington* was in reference to an attorney and provided that the prohibition against the attorney representing conflicting interests went so far as to nullify any judgment rendered in the case and that no fraud need be shown, and it was bottomed on a violation of public policy.

But, says counsel for appellant, this was a corporation. The Riverside Development Co., was a Mississippi corporation in which W. A. Cox was a stockholder at the time he issued the policy of appellee, for which we was also agent, and that a distinction must be drawn between cases of private interest and corporate interests. Happily our supreme court has settled that particular point also. In the case of *Securities Co.* v. *State,* 91 Miss. 195, Judge Calhoun in the opinion of that case, on page 207 discusses the law that in cases where the public policy of a state is concerned corporate existence as distinguished from the interest of stockholders is a mere fiction, and that the court will strike down this fiction in order to uphold the public policy of the state. On page 207 of this opinion Judge Calhoun says:

"The distinction insisted upon by counsel for appellant between the conduct of the corporation and of its stockholders is of importance and of controlling influence when the question involved arises between the corporation and its stockholders and third persons; but this distinction rests upon a mere fiction that the corporate existence and corporate functions are distinct from that of stockholders. This fiction is introduced for convenience and to subserve the ends of justice; but when invoked in support of an end subservient of its policy (the state's public policy) should be and is disregarded by the courts."

This question has been very fully considered in the case of *State* v. *Standard Oil Co.,* 49 Ohio St. 137; 30 N. E. 279; 15 L. R. A. 145; 34 Am. St. Rep. 541.

In the case of *State* v. *Standard Oil Co.*, 49 Ohio St. 137, *supra,* reported in 34 Am. St. Rep. 541, on page 546 of this report the court will see that the corporation itself is a mere fiction of law for an association of persons to do business under a common name with certain powers limiting their liability, but that where the public policy of the state is concerned this fiction will be ignored and the stockholders will be looked upon as partners in the transaction of the business of the corporation and dealt with as such. See, especially page 546 of this opinion and 551. We therefore respectfully submit, that under our supreme court decisions that the fact that the agent of the insurance company being a stockholder merely in the corporation and violating the public policy of the state in occupying two antagonistic positions, does not take this case out of the operation of the rule that the agent's act made the contract void. In the case of *Greenwood Ice Co.* v. *Ins. Co.*, 72 Miss. 46, the supreme court of this state has expressly held that "without ratification an insurance company is not bound by a policy issued by its local agent to insure the property of a corporation in which he is a stockholder, director and vice-president." Citing *Ins. Co.* v. *Meyers,* 55 Miss. 479.

In the *Greenwood Ice Co. case,* Drennan, the agent of the insurance company was elected vice-president and was also one of the directors; seems to have participated in their meetings "but never had anything to do with the active control or management of the business and received no salary." The court held that the policy issued by him as agent of the insurance company to the Greenwood Ice Company, of which he was a mere passive officer and stockholder, was void, but counsel for appellants say that because he was an officer of the company this of itself draws a distinction between the *Ice Company case* and the case at bar by reason of his interest. In answer to this contention we say, that the supreme court of Mississippi in the case of *Wildberger* v. *Hartford Fire*

*Ins. Co.,* 72 Miss. 338 has expressly held that without ratification by the insurer a policy issued by its local agent to himself insuring a stock of goods held by him as receiver is void.

If the court please, the *Wildberger case* is a case where the receiver had no possible interest in the subject-matter of the insurance; was not interested even to the extent of a stockholder of a corporation; was a mere custodian of the property as an arm of the court to be administered through him by the court, and yet our supreme court says in the *Wildberger case* that the policy is void.

Judge Whitfield, in the opinion of the case, discusses the fact that Wildberger might be interested in the subject-matter of the stock of goods in that case by reason of his commissions, but Judge Cooper, Chief Justice, specially concurring, stated that he concurred in the result reached by reason of the fact that Wildberger as agent of the insurance company, could not contract with himself as receiver unless the contract should be approved by his principal with full knowledge of all the facts. "In the opinion of my Brother Whitfield I think too much prominence is given to the fact that Wildberger, as receiver, was entitled to commissions on the property administered by him as receiver. This fact is not, in my opinion, influential." Citing *Badley* v. *Ladd,* 70 Miss. 688.

Continuing, Judge Cooper says: "If the receiver was not entitled to any commission the same rule of disqualifications to make the contract would control. The opposing interests represented by him; the adverse duties he owed under the circumstances, in my opinion precluded him from making the contract sued on without regard to whether he was or was not entitled to act as receiver."

Thus we see that a mere receiver of the court, without the slightest particle of interest in the subject-matter of the insurance, was held by the supreme court in the

*Wildberger case* to be disqualified to issue to himself a policy of insurance of a company that he also represented as agent and that such a policy was void.

In the *Wildberger case* he did not have the interest that Cox had in this case, Cox was interested in the earnings of the appellant company. The court will see at once that the question of the law condemning contracts issued by a person occupying two antagonistic positions is not bottomed on the particular interest that the person may have in the subject-matter of the insurance, but it goes back to the question of a violation of "public policy" because of the possibility it would afford to practice fraud in such transactions. We, therefore, say that the question of the policy not being void in this case as contended for by appellant's counsel because Cox was not an officer of the corporation, is necessarily unsound for the reason that the validity of the policy is not determined by the interest of Cox for it would be equally void though he has no interest at all (under the *Wildberger case*) and is necessarily determined by the question of a violation of public policy.

Counsel for appellant's own authority of Ostrander on Insurance, section 41, page 55, clearly upholds the doctrine for which we are contending here in which he lays down the rule: "So jealous is the law upon this point that it will not even allow the agent or a trustee to put himself in a position which to be honest must be a strain upon him."

In this same section (41) of Ostrander, the rule is laid down: "Where a person was employed as a book-keeper in a manufacturing establishment and had also the agency of several insurance companies, it was a part of his duty to his employers and owners of the factory, to keep the property insured, which he did under policies of the companies for which was agent; and it was held that he was agent for both parties."

On page 157 under discussion of section 41, Mr. Ostrander undertakes to say what the *Greenwood Ice Com-*

*pany case* held; and refers to that case in the notes on page 158 under discussion of section 41, but strange as it may seem, this author never discussed the *Wildberger case* at all although it was reported in the same volume of reports, 72 Miss., that contains the *Greenwood Ice Company case,* and is entirely overlooked by Mr. Ostrander. We say, therefore, that this court will follow its own holdings and not the discussion of a case by Mr. Ostrander.

We respectfully submit that there is no merit whatever in the contention of counsel, that the policy in the present case is valid because Mr. Cox was only a stockholder and not an officer of the corporation. The basic principle of this case is that his conduct was a violation of public policy, and the policy issued is void without the ratification of the company, no matter whether he had any interest or not (under the *Wildberger case*) as we have demonstrated; nor whether or not he was an officer of the corporation. This same principle is upheld in the case of Clements on Fire Insurance, Vol. 2, Rule 92, page 503. *Arispe Mercantile Co.* v. *Capital Insurance Co.* (Ia., 110 N. E. 593), 9 L. R. A. (N. S.) 1084, and numerous cases cited in the footnotes. Cooley's Briefs on Insurance, Vol. 1, page 352 wherein Mr. Cooley discusses both the *Greenwood Ice Company case* and the *Wildberger case* in 72 Miss., and says:

"The invalidity of the policy does not rest on the materiality of the relation of the agent to the risk, but because it is against public policy to allow such an agreement to stand."

And further on he says: "The agent cannot accept a risk on the property owned by a partnership of which he is a member, and a contract for such insurance made between him as agent and the other partners is not binding unless ratified by the company." Citing *Glens Falls Ins. Co.* v. *Hopkins,* 16 Ill. App. 220.

The court will see from all these authorities that our position is correct; that the question of the interest of the

agent in the subject-matter of the insurance is not the determining factor in declaring the policy void; it is a question of public policy. Therefore, we say that there is no merit whatever in the contention of appellant's counsel that Cox, the agent, who issued the policy in this case, was a mere stockholder in the corporation and not an officer of the corporation and that this fact is material.

The next question presented in question No. 2 above set out and that is: Does this record show a ratification of the act of the agent Cox in issuing this policy to a corporation in which he was a stockholder? There is no contention in this case that the company was ever advised of the relation which Cox bore to the appellant until the receipt of the letter dated September 24, 1910, addressed to J. M. Klein, Vicksburg, Miss., signed by W. A. Cox, in which he advised that he is the owner of two shares of stock in the appellant company. The court will notice from the declaration in this cause that the damage occurred on the 15th day of April, 1910; that these parties, appellant and appellee, had entered into an agreement and submission to appraisers of this loss on November 21, 1910. This appraisal agreement signed by the appellant and appellee, we respectfully submit, is an estoppel on the part of the appellant to now insist in this court that this void policy sued on in this cause was ratified by the insurance company, appellee herein. The court will read in the record these words in this agreement for submission to appraisers of date November 21, 1910, signed by appellant and appellee as follows:

"It is expressly understood that this agreement and appraisement is for the purpose of asserting and fixing the amount of said loss and damage only to the property hereinafter described and shall not determine, waive or invalidate any other right or rights of either party to this agreement."

The record on pages 13 and 14 only compose a part of this agreement (the originals have been agreed to by

the attorneys for appellant and appellee, by written agreement filed with the papers in this case, to be substituted by the court in the consideration of this cause for these pages of the record in which several agreements for submission to appraisers are set out) in that, in the record, as copied, the clerk failed to copy the writing on the back of the several agreements for submission to appraisers which are where the appraisers are to be sworn; where they select a third appraiser; where the third appraiser is himself sworn; and where the award is made by the sworn appraisers. In other words, on the back of the printed agreement for submission to appraisers signed by the parties November 21, 1910, together with the other agreements for submission to appraisers which were submitted but not signed by appellant are contained the provisions for swearing the appraisers and swearing the umpire and having the award by these sworn appraisers. These provisions on the back of the originals are not in the record but are made so by this agreement of counsel. In each one of these proposed agreements after November 21, 1910 (found in the originals filed by agreement of counsel in this cause) the same provision is incorporated as set out above; that this agreement for submission to appraisers shall not determine, waive or invalidate any other right or rights of either party to this agreement. We respectfully submit, therefore and insist, that the agreement signed by the appellant in this case of November 21, 1910, obligated and bound the appellant not to insist that any right, defense, or other privilege the insurance company had under this policy was waived by entering into the proposed agreement for submission to appraisers. Indeed, if the court please, if the agreement for submission to appraisers, as provided for in the policy, had gone any further than simply to determine the amount of damage only the courts hold that it would be independent of the contract of insurance, oust the jurisdiction of

the court, and therefore void.   This is the clear holding of the supreme court of the United States in the case of *Hamilton* v. *Liverpool & London Globe Insurance Company,* 136 U. S. 242, wherein the court held on page 254 in the opinion, that "the conditions of a policy containing an agreement of the parties to the contract of insurance that any difference arising between them as to the amount or loss or damage to the property insured, shall be submitted at the request in writing of either party to the appraisal of competent and impartial persons to be chosen as therein provided, whose award shall be conclusive as to the amount of such loss or damage only and shall not determine the question of the liability of the company, etc., is valid."

Says the court: "Such a stipulation, not ousting the jurisdiction but leaving the question of liability to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is unquestionably valid, according to the uniform current of authorities in England and in this country." Citing authorities.

The case comes within the general rule long ago laid down by this court: "Where the parties in their contract fix a certain mode by which the amount to be paid shall be ascertained as in the present case, the party that seeks an enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect.   He cannot compel the payment of the amount claimed unless he shall procure the kind of evidence required by the contract or show that by time or accident he is unable to do so."   Citing *U. S.* v. *Robeson,* 9 Peters 319-327; *Martinsburg & Potomac Railroad Company* v. *March,* 114 U. S. 549.   From this case the court will see that no other kind of an agreement could be entered into by the parties to this suit except an agreement to estimate the loss and damage only and to leave open for the determination of the court the question of

liability which could not be given to the appraisers without ousting the jurisdiction of the court and make the agreement for submission to appraisers void absolutely. On record page 11 is the provision of the policy sued on in reference to this appraisement, and it expressly provides that "the loss or damage be ascertained by two competent and disinterested appraisers, the assured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; that the appraisers together shall then estimate and appraise the loss, stating separately the sound value and damage, and failing to agree, shall submit each subject of difference to the umpire, and the award in writing under oath of any two of them shall determine the amount of such loss, but such appraisal shall affect no other question under this policy, and until such appraisal (if requested) shall be had, the loss shall not be payable." We therefore respectfully submit, that by the very terms of the policy itself that is sued on in this case, and by the terms of the agreement for submission to appraisers signed by the Riverside Development Company, appellant, and the Hartford Fire Insurance Company, appellee, on the 21st day of November, 1910, with the provision for their qualification by being sworn, on the back of said agreement for submission to appraisers, that there could not possibly arise a ratification of the policy so as to take away the rights or privilege of the appellee in this case (the insurance company) to litigate the question of liability on any ground that the law permitted.

It is an entire misconception of the law of this case to say that, because appraisers are limited by law to the determination of the loss and damage only, leaving the question of liability to be fixed by the courts and that this is the only kind of an appraisal that the courts will tolerate, that because an appraisal was had that it operated to ratify a void policy and to waive the defense

that the policy was void by reason of the fact that the agent who issued it was a stockholder in the corporation who was insured by the policy issued. This is an entire misconception of the law in this case because after an arbitration is had the question of liability is yet to be determined and if the insurance companies see proper they may litigate this question of liability on any ground permitted under their contract. The policy itself expressly provided that the arbitration should not waive any rights or defenses they had. The agreement for submission to appraisers signed by the appellant expressly contains that provision and every subsequent agreement that was offered to appellant contain the provision that the submission of the amount of the loss and damage to appraisement should not waive or determine or invalidate any other rights of either party to the agreement and the policy itself provided that the appraisement should not affect any other question under this policy. We therefore respectfully submit that the appellant is estopped, both by the policy and by the agreement for submission to appraisers signed by it on the 21st day of November, 1910, to claim that this appellee waived any rights by entering into said appraisement agreements; on the contrary, if the court please, this appraisement agreement is a "nonwaiver agreement" and expressly provides that no rights of either party to the agreement shall be waived and this provision was in each one of the proposed agreements submitted by appellee. Our court has passed on the effect of a nonwaiver agreement in the case of *Insurance Company of North America* v. *Carruthers,* 16 So. Rep. 900, appealed from the chancery court of Coahoma county, Judge Woods in delivering the opinion in that case, said: "The policy of insurance binds the assured to furnish the company with proof of loss within a reasonable time after the loss occurred. No proofs were ever made. To meet this defense of the company an attempt is sought to show a waiver of proof

by denial of liability by the company.''     Finally and con-
clusively on this point, on the 3rd day of January fol-
lowing this loss, and after the alleged denial of liability
of the company, Carruthers and the special agent of the
insurance company by an agreement in writing signed
by them, stipulating that the special agent should ex-
amine into the facts connected with the burning of the
property and ascertain the value thereof, and that this
should be without detriment to, or waiver of, any of the
rights of either party to the contract of insurance as wit-
nessed by the policy and without any admission of lia-
bility by the company.    And this agreement concludes
with these words:

''And the said insurance company will not be held to
have waived any of its terms as expressed in its con-
tract, by any act of its special agent.''    We are of the
opinion there is not shown any waiver or proofs of loss
by denial of liability on the company's part, and enter-
taining this opinion we find it unnecessary to express
any opinion touching the many other questions raised.
The decree of the chancery court will be reversed and a
decree will be entered in this court dismissing complain-
ant's bill.

We respectfully submit that this case determines the
entire contention of the appellant as to ratification.    It
surely cannot be the law of the state of Mississippi, that
because an insurance company enters into a written
agreement with the assured by which an effort is made
to arrive at the loss with a view to settling the loss and
the written agreement between the parties provides that
neither party shall waive any rights they may have on
their side of the case, that because this was done that the
insurance company waives everything and the appellant
nothing; and that the insurance company therefore
waived its right to assert a legal defense to the policy
after signing a writing that no right should be waived.
The proposition, we respectfully submit, with all due def-

erence, is absolutely unsound, illogical and arbitrary. We insist, if the court please, that the appellant in this case can be estopped to assert a contention as well as appellee, and that the written agreement entered into by appellant with the appellee of date November 21, 1910, was a nonwaiver agreement (under the *Carruthers case* above cited) and left each party to this suit free to assert any defense or right that either party had on either side of this case, and it does not lie in the mouth of appellant now to say, after having signed this agreement, that the appellee in this case waived its right to plead that this policy was void because, forsooth, the appellant undertook to deal with appellee with an iron hand and injected every quibble and objection that could be devised to having the loss in this case arbitrated by appraisement, and when it could not do that, and it awoke to the fact that the policy, the loss under which was sought to be ascertained, was being proceeded with under a nonwaiver agreement that thereby the appellee lost its rights to defend this suit. We respectfully submit that this proposition is utterly absurd. Our own supreme court has passed on the provisions of these agreements for submission to appraisers, and in the *Greenwood Ice Company case*, 72 Miss., page 46 the very terms of this agreement are set out in the opinion by Judge WHITFIELD on page 50 of the opinion where he says:

"The action of Kimball (the adjuster) in investigating the loss and submitting the matter to appraisement was no waiver of the right of the appellee to deny liability. The policy provides (as does the policy in this case) that 'no appraisal shall be construed under any circumstances as evidence of the validity of said policy, or of the company's liability thereunder.' And the agreement for appraisal in this case stipulates that 'it is for the purpose of ascertaining and fixing the amount of said loss and damage only and shall not determine, waive or invalidate any other right of either party to said

agreement" and Kimball expressly refers to this reservation in his testimony. The case of *Ins. Co.* v. *Matthews,* 65 Miss. 301, is decisive of this point."

The policy in this case expressly provides: "But such an appraisal shall affect no other question under this policy."

This quotation from the *Greenwood Ice Co. case,* 72 Miss. 50 and the *Carruthers case,* 16 So. Rep. 911, above referred to, demolish the position of appellant in this case that any right was taken away from the appellee to show this policy void from its inception.

This is a very different case, if the court please, from the case where there was no nonwaiver agreement entered into, and the policy was insisted on as valid by the company and then sought to be repudiated by the company; but here was a distinct agreement entered into by the parties in accordance with the terms of the policy as said in the *Greenwood Ice Company case,* whereby the question of liability under the policy was expressly reserved and the appraisers were to determine the loss and damage only and the parties to this suit agreed, that by reason of the appraisement being entered into, that no rights of either party to this suit should be waived.

Now, we respectfully submit that that agreement bound the appellant in this case and estopped appellant from insisting that the appellee had waived its rights and defenses and ratified the policy by entering into the appraisement. It is not the policy of the law, we respectfully submit, to punish litigants for seeking to compromise their cases. The appellee in this case had a right, if it saw proper, to go ahead and compromise this loss, even though the appellee was conscious of the fact that the policy was void. Surely this court would not undertake to punish the appellee because the appellee may have endeavored to adjust this loss without litigation with this appellant; but when the appellant arbitrarily demands a certain settlement of this appellee and drags the appel-

lee into court on repeated litigations after signing an agreement in accordance with the terms of the policy that entering into the arbitration shall not waive any of the appellee's rights, or the rights of either party to the lawsuit, how can it be said, we respectfully submit (under the *Carruthers case* above cited on the effect of a non-waiver agreement and under the quotation from the *Greenwood Ice Company case*) that this agreement of the parties does not bind the parties to this suit, and that the appellant, notwithstanding the signed agreement by it, can stand in court at this time and say: "I have waived nothing; the insurance company has waived all its defenses."

We respectfully submit that no such conclusion can fairly be drawn from the facts and authorities in this case, and that appellant's contention as to a ratification is absolutely unsound.

Judge WHITFIELD, in the quotation, *supra* from the *Greenwood Ice Co. case,* refers to the case of *Insurance Company* v. *Matthews,* 65 Miss. 302. We invite the court to read that case. Says Judge CAMPBELL in 65 Miss. 313.

"If the court can affirm confidently that the insured should not, as a reasonable person, have been misled, it would not be left to the jury but should be decided by the court." . . . "Where it appears that the insured was not misled, all idea of waiver is excluded. That the insured claims to have been misled signifies little and is not the criterion by which to determine the question which was what occurred and is relied on as a waiver sufficient to mislead the average man into the belief that he was relieved from the obligation to do more than he did."

On page 314 in the center of the page, the court said in this opinion: "We reaffirm our announcement made in the case of *Insurance Company* v. *Sorsby,* 60 Miss. 302, that the company is not to be prejudiced in its defense because its agent promptly went to the scene of the

fire and pursued every allowable method of investigation of the loss and tried ineffectually to come to an understanding with the insured. This would be to punish for an effort to perform." "Investigation into the circumstances of a loss and an effort to agree with the insured as to the amount of his loss and an offer to pay a sum less than the amount claimed, will not constitute a waiver. There must be more than this; and where this alone appears the jury should be told to find for the insurer. Waiver which rests upon the idea of estoppel cannot be predicative of mere performance of duty or exercise of right or offer of compromise by the insurer; and this view must be firmly maintained by the courts."

We therefore say that in the light of the nonwaiver agreement that was entered into in this case (in the light of the *Carruthers case* and the *Greenwood Ice Company case* discussing the effect of these agreements) it does not lie in the mouth of the appellant to say that the appellee had waived any rights under this policy or that it had ratified the policy in any sense because a ratification of a void policy necessarily involves the waiver of the right to object to it. Therefore, we insist that the contention made in this case that the appellee had ratified the policy necessarily carries with it the idea that the appellee had waived its right to object to the policy on the ground that it had been issued by Cox, the agent of the insurance company to the appellant corporation in which Cox was a stockholder. Therefore, if the court please, the doctrine of a waiver is at last the real doctrine upon which this case must hinge and the question involved in this case is simply this: "Has the appellee waived its right to insist that this policy is void?" The case of appellant is given no strength by saying that the appellee ratified the policy and to undertake to draw a distinction between ratification in this case and waiver. The doctrine of ratification contended for in this case is nothing in the world but a statement of the same proposi-

tion in other words and that is, that this appellee waived its defense to this policy that it was void by having entered into the agreement for appraisal, which was also a nonwaiver agreement.

We say, that under the *Carruthers case* and the *Greenwood Ice Company case,* if the agreement entered into or requested of the appellant, by its terms provided that no rights of either party should be waived, then, under the *Carruthers case* above cited, the appellee could not lose its right to contest its liability under this policy on any legal ground the law permitted. Therefore there could be no ratification because the agreement entered into here expressly provides that we waive no rights in the premises.

We therefore respectfully submit that the two propositions contended for by appellant in their brief are utterly unsound.

1. That the policy is not void because Cox, the agent who issued it was only a stockholder in the corporation to which the policy was issued; and 2. That if the policy is void by reason of Cox being a stockholder in the corporation above stated, that the appellee ratified the policy after knowledge of that fact.

We say that this record demonstrates that both of these propositions are absolutely untrue; that this appellee never waived any of its legal defenses to this policy by any act done by it and that the agreement signed by the appellant of date November 21, 1910, estopped the appellant from making any such contention.

Smith, C. J., delivered the opinion of the court.

This is an appeal from a judgment denying appellant a recovery upon a tornado insurance policy issued to it by one of appellee's agents. The declaration was demurred to, and upon the overruling of the demurrer appellee filed a plea of general issue, with notice of special matter to be given in evidence, together with an affidavit

alleging that it "has a meritorious defense, and that the foregoing plea and notice under the general issue present said defense, which affiant asks to be filed." This notice of special matter set up facts which constitute a good and substantial defense to the suit.

The court, over appellant's objection, permitted this plea and notice to be filed, and its action in so doing is assigned for error. The ground of this assignment is that the affidavit does not constitute a compliance with section 755 of the Code, and therefore that the judgment of the court on overruling the demurrer should have been that plaintiff recover. Counsel for appellant does not point out wherein this affidavit fails to comply with the statute, and it seems to us that there is no merit in the contention; for, while the affidavit does not set "forth fully the nature of the defense," the notice, to which reference is made in the body of the affidavit, does.

The policy was written and issued by W. A. Cox, appellee's local agent at Marks, Miss. He was, at the time he issued it, one of appellant's stockholders, which fact was unknown to appellee, and was not learned of by it until after the loss occurred. At the close of the evidence, the court instructed the jury peremptorily to find for appellee, and there was a verdict and judgment accordingly.

From the general rule that an agent cannot bind his principal in any matter in which he himself has an interest, it follows that an agent authorized to issue insurance policies cannot bind his principal by issuing a policy on property owned by him, or in which he has an interests adverse to that of his principal, and, consequently, the policy sued on was void. *Greenwood Ice & Coal Company* v. *Georgia Home Insurance Company,* 72 Miss. 46, 17 South. 83; *Wildberger* v. *Hartford Fire Insurance Company,* 72 Miss. 338, 17 South. 282, 28 L. R. A. 220, 48 Am. St. Rep. 558; 1st Cooley's Briefs on In-

surance, 352; 22 Cyc. 1435, authorities cited; 31 Cyc. 1432; note to Potter's Appeal, 7 Am. St. Rep. 279; *Ritt* v. *Washington, etc.,* 41 Barb. (N. Y.) 353; *Glens Falls Insurance Company* v. *Hopkins,* 16 Ill. App. 220.

But it is said that this property was not owned by the agent himself, but by a corporation in which he was simply a stockholder, and therefore that he had no interest in the property itself. This distinction is too fine-spun to be worthy of consideration. It can hardly be said that a stockholder is not interested in the preservation of the property of the corporation in which he has stock, when we remember that the destruction of the corporation's property has a direct bearing on the value of his stock and on the income to be derived by him therefrom.

Again, it is said by counsel for appellant that this rule cannot apply here, for the reason that appellee's agent was not called upon to exercise any discretion in the issuance of the policy; the rate being fixed, and the agent's only duty being to write the policy on the payment of the premium. It may be that in writing tornado insurance this agent was not called upon to exercise the same degree of discretion that he is called upon to exercise in writing insurance of a different character; but it cannot be said that he was not called upon to exercise any discretion whatever. And moreover, a violation by an agent of his instructions is, under some circumstances, binding upon his principal. That this agent did not violate his instructions in issuing this policy, and acted in perfect good faith in issuing it, is wholly immaterial, for that is a matter into which the law will not inquire; it being contrary to a sound public policy for a man to be permitted to put himself "into relations which ordinarily excite a conflict between self-interest and integrity," except with the full knowledge and consent of all parties to be affected thereby.

The issuance of this policy was reported to appellee by its agent shortly after it was issued, and because it

then raised no objection thereto counsel for appellant contends that it thereby ratified its agent's act. In this they are in error, for the reason that the ratification of an invalid act of an agent follows upon a failure to object thereto only when the principal has full knowledge of the circumstances which render the act invalid. The fact that appellee's agent was one of appellant's stockholders was learned by it shortly after the loss occurred, and appellant contends that it then became its duty to promptly repudiate its agent's act in issuing the policy, if it desired not to be bound thereby, and by not so doing it is now estopped from exercising that right. In this appellant is in error, for all that appellee was required to do in this connection was to so act as not to mislead appellant to its prejudice.

Again, it is said that this right was waived by appellee because, with full knowledge of the fact that its agent was one of appellant's stockholders, it called upon appellant to joint with it in the appointment of appraisers to appraise the amount of appellant's loss, with which request appellant complied, and an unsuccessful attempt to appraise the amount of the loss was made. A sufficient answer to this contention is that the clause of the policy under which these appraisers were appointed expressly provides that "such appraisal shall affect no other question under this policy."

There is no merit in any of appellant's contentions, and therefore the judgment of the court below is affirmed.

*Affirmed.*

Cook, J., took no part in the decision of this case.