## J. FISHER SATTERTHWAITE V. LOOMIS & MCLACHLEN.

### No. 7123.

1. **Trust—Volunteer Trustee.**—Loomis & McLachlen had been agents for Satterthwaite, and had authority to look after and to sell lands for him. He temporarily left the State, withdrawing his lands from sale. Loomis & McLachlen conducted some other business for him in his absence. While absent a judgment was rendered against him and under execution the lot in controversy was levied on and sold as his property, the appellees Loomis & McLachlen becoming purchasers. There was testimony tending to show that the purchase was made for Satterthwaite. There was also testimony that the agency ceased before Satterthwaite left the State. The lot was sold and Satterthwaite sued for its value. *Held:*

1. Even if the agency had terminated as to the lands, yet if Loomis & McLachlen in fact bought the land for the use and benefit of Satterthwaite and to protect his interest, they thereby made themselves his agents in the matter by their voluntary acts in assuming to act, and if acting for him the purchasers would be deemed his trustees holding the title for him subject to any equities arising in their favor.

2. The issue being made in the testimony it was error to refuse an instruction requested submitting it to the jury.

2. **Same—Case Approved.**—Whether one performs acts of agency for others under an employment by them or as a volunteer can make no difference as to his responsibility growing out of that relation. In equity an agent is disabled from dealing with the matter of his agency on his own account. Dennis v. McCagg, 32 Ill., 429.

3. **Practice.**—In suit against an agent for the value of property held in trust and by him sold without authority the defendant could set off the amount of his expenditure in purchasing and redeeming the land for the benefit of the plaintiff.

Appeal from El Paso. Tried below before Hon. T. A. Falvey. The opinion states the case.

*Leigh Clark* and *Nugent & Stanton*, for appellant.—If the business relations of defendants Loomis & McLachlen and the plaintiff were such as to justify the defendants in assuming to act as plaintiff's agents, and if they did so act and such action was subsequently ratified and approved by plaintiff, then whether the relation of principal and agent actually existed by appointment or not the law would regard them as plaintiff's agents and as holding the title to said land acquired at said sale in trust for plaintiff, therefore the court erred in virtually restricting the jury to the consideration of the question whether an actual agency existed, and in refusing to allow them to consider the question of agency upon defendants' assuming to act as such.

*Patterson & Buckler*, for appellees.

MARR, Judge, *Section A.*—"Appellant on the 5th day of September, 1888, filed his first original petition against A. M. Loomis and W. B. McLachlen, who compose the firm of Loomis & McLachlen, defendants (appellees). In said petition the plaintiff substantially alleged, that on the 6th day of September, 1887, the defendants were his agents in the city and county of El Paso; that as agents it was the duty of said defendants to look after and attend to the business and property of plaintiff, consisting of what is known as the Satterthwaite addition to the city of El Paso, Texas, and to do any and all things appertaining thereto or anywise connected therewith, and especially to guard and protect the title of plaintiff thereto, and to protect said property or any part thereof from forced sale, and to buy for plaintiff such as might be forced to sale; that defendants were provided with authority to sell said property or portions thereof for plaintiff's use at stipulated prices, and were the general agents of plaintiff in and about the sale, management, and protection of said property; all of which plaintiff trusted defendants would discharge faithfully, fairly, and honestly, and would so account to plaintiff; but that on the day and year aforesaid a portion of said Satterthwaite addition was, without plaintiff's knowledge and during plaintiff's absence from the State, by sheriff of said county seized and sold under execution issued upon a judgment obtained by J. A. Buckler and Millard Patterson against plaintiff, which judgment with costs aggregated $260; that said property was allowed by defendants Loomis & McLachlen to be sold at public vendue, and at said sale the defendant McLachlen appeared and bid in said property for said sum of $260 for plaintiff, as the said McLachlen then represented and stated; but afterward the defendants, in violation of good conscience

and honorable dealing, acting, colluding, and conspiring together to injure, cheat, and defraud plaintiff of said property, caused the sheriff afterward to make the deed of said sale to the defendant A. M. Loomis, and that afterward on the 4th day of August, 1888, the said defendant A. M. Loomis sold and conveyed said property to one Eva M. Smith for the sum of $600; that the property was of the value of $1000, and this sum by reason of the premises the defendants became liable to pay to plaintiff, which they promised and failed and refused to do. Plaintiff prayed judgment for $1000 with costs and for general relief.

"The defendants by their first amended original answer filed February 4, 1889, pleaded a general denial.

"On the 8th day of February the cause was submitted to a jury and the trial resulted in a verdict and judgment thereon for defendants."

There are but two of the appellant's assignments of error that require notice, and they may be considered together. The others, relating to omissions in the charge of the court, may be dismissed with the remark that if the charge was not sufficiently comprehensive in the opinion of appellant's counsel they should have requested appropriate instructions, which, however, they did not do in these particulars. The assignments which we think demand attention and present the controlling question on this appeal are the following:

"1. The general charge of the court was erroneous in this, that said charge virtually restricted the jury to a consideration of the question as to whether at the time of the purchase of the alleged lands at execution sale the defendants were the agents of the particular land sold, and required them to find for defendants if they should believe from the evidence that defendants were not such agents.

"2. The court erred in refusing to give the special instruction asked by plaintiff and in failing to include in its general charge the subject matter or issue or phase of the case presented by such special instruction."

The first is important only as giving additional weight to the second. We will therefore devote our attention mainly to the last of these assignments. The special instruction asked by plaintiff, omitting the caption, etc., is as follows, viz.: "If the dealings between the plaintiff and defendants at and before the sale of the land in question under the judgment in favor of Patterson & Buckler against the plaintiff were of a character to justify the defendants in assuming to act for the plaintiff in preventing the sacrifice of plaintiff's land by the alleged execution sale, and if the defendants did so assume to act for and on behalf of plaintiff, and did for and on behalf of plaintiff buy the alleged land to protect plaintiff's interest therein, then so far as the purchase of said land is concerned they are to be regarded as plaintiff's agents, and the law in such case would regard them as holding the title to the land for plaintiff's benefit."

Ought this instruction to have been given by the District Court? The plaintiff proved, or at least introduced much testimony tending strongly to establish, all of the material averments of his petition. There was, however, a conflict of evidence as to several of the allegations. The chief conflicts in the evidence relate to the controverted points, whether the appellees were still the agents of the plaintiff at the time they bought in his land at the sheriff's sale, in reference to that land or any of the lands that had been previously confided to them by the appellant; and secondly, whether they in fact purchased the land in the name of one of them but for the benefit of the plaintiff as alleged by him (even supposing the agency to have terminated) or on their own account and for themselves. The appellees claim that the agency had terminated several months before their purchase, and they bought the land for their own use and benefit, unfettered by any trust restraints or obligations, and it is not disputed, but admitted by plaintiff, that they paid for the land with their own money. The main fact that was proved, however, tending with any force to indicate that the agency was terminated with reference even to the lands, is the fact that appellant took his lands off the market for the time being, upon his leaving the State, about the time he was served with citation in the suit of Buckler and Patterson against him; but this is by no means absolutely incompatible with the continuance thereafter of the appellees in his employment as agents to look after and protect his interest, even in the lands, during his absence, though their power to negotiate sales of the lands no longer existed. There is no proof discoverable by us in the record that plaintiff expressly discharged or dismissed the defendants from his employ. On the contrary, there is proof that the fiduciary relation was recognized by the appellees for some time after the purchase of this land, in their business intercourse with the appellant, though it may not have extended to the sales or management of such lands of the plaintiff as they had not previously contracted to sell for him.

But however this may be, we are of the opinion nevertheless that whether the original agency continued to time of their purchase or had terminated as to the lands, yet if the appellees in fact bought the land for the use and benefit of appellant and to protect his interest, they thereby made themselves his agents in the matter by their voluntary acts in assuming to act and of acting for him; and in either event the purchase would inure to his benefit and the purchasers be deemed his trustees, holding the title for him subject to any equities arising in their favor. They could only have held the land as security for the money they had expended in the matter of purchasing the land for plaintiff's benefit, whether as agents under the original agency or as volunteers in his behalf with the avowed intention of buying in the land for him, or under an agreement or understanding to that effect, if any,

between them and plaintiff's attorney in the original suit out of which the execution issued and the sale of the land thereunder was made to appellees. Casey v. Casey, 14 Ill., 112. There was testimony introduced without objection tending to show such an understanding, though it is not alleged in the petition except as may be considered as embraced in the general allegation that the defendants purchased the land for and on behalf of the plaintiff and as his agents. The imperfections of the petition, if it contains any, have not, however, been urged in this court. We think, therefore, in any event that the issue to which the special instruction relates arises under the pleadings.

We will insert portions of the testimony of appellant and of his said attorney, Mr. Stanton, as an additional manifestation of the applicability of this instruction requested by the plaintiff. Appellant testified that appellees were the only persons authorized to sell lands for him; that they were his agents during the time he was absent from the State, but he admitted that he had taken the lands off the market for sale prior to his departure; that upon his return, however, Stanton informed him of what had occurred, and he then interviewed McLachlen on the subject, and that he told plaintiff that they had bought the land for him and taken the deed in the name of Loomis to secure the amount they had advanced. He further testified that he came back to El Paso about November, 1887, and when he learned that the lots had been sold under the judgment obtained by Patterson and Buckler against him he went to McLachlen and said "he wanted to settle up the matter," and McLachlen said "all right." The matter was not then settled, and he said nothing more to defendants about it until a short while before this suit was instituted, when he went to defendants' office and said to Loomis that he came with $300 with which to redeem the lots, and tendered him his check for that amount, which he (Loomis) refused to accept, and said "Three hundred dollars will not buy the lots." McLachlen was not present at that time. This money was tendered for the purpose of reimbursing them for what they had paid out in the purchase of the lots under the execution and for the purpose of having the lots reconveyed to him. When he was served with citation in the case of Patterson and Buckler he met his attorney Stanton on the street, and they together met McLachlen, when he then told Stanton and McLachlen that he was going away and that he wanted the matter attended to; he was at the time the citation was served on him on his way to the depot and was in a great hurry to get to the train; that he put the case in Stanton's hands as his attorney and told McLachlen he wanted the matter looked after; that the lots were worth at the time they were sold $850; that defendants told him they had paid out $260 dollars for the lots.

M. W. Stanton, attorney at law, testified, that he was present at the sheriff's sale of the lots in question; that Satterthwaite employed him

and his brother to look after the suit of Patterson and Buckler against him; that Satterthwaite told him to look after the suit, to do the best he could, and if necessary to appeal the case. Satterthwaite said something about Loomis and McLachlen co-operating with witness and his brother. When the case came on for trial the plaintiffs Patterson and Buckler obtained judgment, and witness intended to take the case up by writ of error so as to delay matters until Satterthwaite could return and arrange the matter. Witness talked with McLachlen about the judgment, and he told witness, or gave witness to understand, that they (Loomis and McLachlen) would pay off this claim and run the risk of getting the money from Satterthwaite. The reason McLachlen gave witness for having the deed from the sheriff made to Loomis was that Loomis was a more cautious man than he (McLachlen), and that Loomis feared something might happen to Satterthwaite, and that to more fully protect themselves concluded it safer to have the deed made to Loomis. At the time of the sheriff's sale McLachlen said they (Loomis and McLachlen) were buying the lots in for Satterthwaite, when Patterson, one of the judgment creditors, said, "If you are buying it in for the owner, bid the amount of the judgment." Two hundred and sixty dollars was then bid, as witness, McLachlen, and Patterson had figured up the amount and concluded $260 would cover judgment and costs. That if witness had not been given to understand by defendants that they were buying in the property for Satterthwaite he would himself have arranged for the money and paid off the judgment for him.

We have stated enough of the evidence, though it is more or less conflicting with that of appellees, to demonstrate the materiality and importance of the view of the law embodied in the requested instruction to the merits of the controversy. In many instances where the parties sustain no fiduciary relation to each other it might be difficult to enforce a parol agreement or determine the character of the trust, if any arises, where, for example, in the absence of any fraud except of that unimportant character which occurs in the breach of every contract, A buys in real property belonging to a third party, in his own name and with his own funds, but has previously agreed to do this for the benefit of B. Robertson v. Robertson, 9 Watts, 32; Minot v. Mitchell, 30 Ind., 228. Happily that illustration does not fit the circumstances of this case. If the circumstances relied on by the plaintiff are found to be the true facts of the case, then a trust relation is not only established but also its violation, and consequently in the eyes of the law a palpable fraud or injustice on the rights of the appellant is shown, regardless of the motives of the defendants. We do not determine what are the true facts, as that is a question exclusively for the jury, but under appropriate instructions as to the law. The bone of contention between the parties, even where a trust is denied on one side, is generally the prop-

erty, not the name of the trust. If the courts succeed in awarding it to its rightful owner, or where this can not be done in affording him compensation therefor, it can not be very important whether the trust is denominated "express," "implied," "resulting," or "constructive." If that relationship exists, by whatever name designated, the courts will recognize it and charge the property as well as the conscience of the trustee with the trust, and thus protect the interest of him for whose benefit it was created or has been implied. But we do not need to enter into a discussion of this subject. We find that has been done to our entire satisfaction by the Supreme Court of Illinois in the case of Dennis v. McCagg, 32 Illinois, 429. That case is practically on "all fours" with the present controversy. The decision there made fits this case like a glove. The syllabus correctly indicates the points and principles of law there determined. From that we make the following extracts, with our approval: "Whether one performs acts of agency for others under an employment by them or as a volunteer can make no difference as to his responsibilities growing out of that relation. In equity an agent is disabled from dealing in the matter of his agency on his own account. In a suit in chancery to subject lands to the payment of the purchase money remaining unpaid under a contract of purchase a decree passed directing that in the event of the nonpayment of the money within a given time the land should be sold. A third party, assuming to act in behalf of the defendants in the decree, either by *employment* or *voluntarily*, paid over his own money to the complainant within the time prescribed in the decree and took a deed from him for the premises in his own name. Held, that the party making the redemption held the title thus acquired in trust for the benefit of those for whom he was assuming to act, and as security only for his advances. And where he had sold a portion of the premises to parties not apprised of the equity of the principal parties in interest, their title would be protected; but the agent who thus put it beyond their reach can be compelled to indemnify his principals for the loss and injury thereby sustained, either by requiring him to pay over the purchase money he received for the land, with interest, or the present value of the land, as may be deemed most equitable." See also 1 Perry on Trusts, secs. 172, 215; Mackay v. Martin, 26 Texas, 57; Hendrix v. Nunn, 46 Texas, 141; Cook v. Cook, 69 Pa. St., 443.

It follows, therefore, that the special instruction requested by plaintiff ought to have been given in charge, or at least that view of the law should have been submitted in appropriate terms to the jury as a part of the law applicable to the facts proved. This the court below did not do. In the general charge the learned trial judge simply instructed the jury on this point in effect that if they believed from the evidence that the appellees were the agents of the appellant and in reference to

the land at the time they bought it at the execution sale, then they would find for the plaintiff, otherwise for the defendants. This was not a sufficient announcement of the law to call the attention of the jury to the various phases of the case upon which they were required to pass. It had the effect of ignoring vital issues in the controversy. We can not consider it as tantamount to or as embracing the principles of law suggested by the requested instruction which was refused. This will necessarily lead to a reversal of the judgment. It may not be improper to say, in view of another trial, that if the plaintiff should recover we do not doubt that under proper pleadings the defendants would be entitled to recoup the amount of his damages to the extent of the money expended by them·in purchasing and redeeming the land for plaintiff's benefit. 1 Perry on Trusts, sec. 166; Mackay v. Martin, 26 Texas, 63; Adams v. Sayre, 76 Ala., 509.

We express no opinion as to any supposed repudiation of the trust or waiver of the right to enforce it by refusal or failure of the plaintiff to promptly redeem the land upon his return, though there was some evidence tending to raise that issue, because the matter was not pleaded nor noticed in the court below, though now referred to by appellees.

Because the court erred in refusing to allow the special instruction requested by plaintiff's counsel, we think that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted May. 12, 1891.