Greenwood Ice & Coal Co. *v.* Georgia Home Insurance Co.

1. Fire Insurance. *Agent. Antagonistic relations.*

Without ratification, an insurance company is not bound by a policy issued by its local agent to insure the property of a corporation in which he is a stockholder, director, and vice president. *Insurance Co.* v. *Myers*, 55 Miss., 479.

2. Same. *Ratification. Investigating loss.*

In such case, the insurance company will not be held to have ratified the issuance of the policy merely because its adjuster, in ignorance of the facts, investigated the loss, and agreed in writing to have the amount thereof determined by appraisement, he, on learning the facts, having promptly withdrawn from the agreement.

3. SAME. *Agreement to appraise. Waiver.*

Such an agreement for appraisement will not estop the insurance company to deny all liability for the loss, where the agreement itself provides that the appraisement shall be only for the purpose of fixing the amount, and shall not waive any other right of either party.

FROM the circuit court of Leflore county.

HON. R. W. WILLIAMSON, Judge.

This is an action by appellant against appellee to recover on a policy of fire insurance. W. A. Drennan was the local agent for several insurance companies, including appellee, the Georgia Home Insurance Company. He was also a stockholder, director, and vice president of the Greenwood Ice & Coal Company. On February 14, 1893, he issued four policies, aggregating $12,-000, on the buildings and machinery of the appellant company, one of these being the policy sued on.

The property insured had originally belonged to the Leflore Ice & Coal Company, which became insolvent, and the property was sold under foreclosure proceedings, and acquired by certain persons, who organized the Greenwood Ice & Coal Company, in which company Drennan was the owner of five shares of stock. He was elected vice president, and was also one of the directors, and seems to have participated in their meetings, but never had anything to do with the active control or management of the business, and received no salary. The premiums on the policy issued by Drennan were paid by money in his hands, as agent, derived from the unearned premiums on the canceled policies in favor of the Leflore Ice & Coal Company.

On the day after the policies were written, and before they passed out of the possession of Drennan, the property insured was burned, and, during the fire, one Keesler, the secretary and treasurer of the Ice & Coal Company, called on Drennan for the policies, and Drennan immediately turned them over to him.

A few days after the fire, one Kimball, the adjuster of appellee, went to Greenwood and remained there two days inves-

tigating the loss, and, while there, suggested the propriety of an arbitration, and produced and signed an agreement therefor, and it was signed also by the officers of appellant and the adjuster of the other companies. The nature of this agreement, which was dated February 23, 1893, is stated in the opinion of the court. After signing this agreement, Kimball called on the secretary and treasurer of the appellant company to furnish him with a list of its stockholders and officers, which was done. This statement showed Drennan to be its vice president and one of its stockholders. Kimball left on the same day, taking with him this statement. He visited several other towns, and, on the sixth of March, wrote a letter from Meridian, Miss., withdrawing from the agreement for an appraisement. He testifies that, in revoking the agreement, he acted, in part, on information from the home office of the company, to the effect that the daily report of Drennan, showing the issuance of this policy, had been received at the home office three or four days after the fire, and in the same mail with the notice of loss. Notwithstanding this action of Kimball, the appraisers, who had been selected, proceeded to make their award. The company, however, refused to pay, and denied all liability, whereupon this suit was brought. In view of the opinion, it is not necessary to set out the pleadings, or to make any further statement of facts. There was a peremptory instruction for defendant, judgment accordingly, and plaintiff appeals.

*Rush & Gardner*, for appellant.

The defense that Drennan was incapacitated to act, on account of his interest in the plaintiff corporation, cannot be made, in view of the action of Kimball, which estops the company from setting up the defense. The arbitration was had at the suggestion of Kimball. On the question of estoppel, see *Rivara* v. *Insurance Co.*, 62 Miss., 720; 2 Wood on Fire Insurance, § 526; 36 Wis., 67.

It was the duty of the defendant, on learning this policy had been issued and a loss had occurred, to act at once, either by repudiating the agency of Drennan, or acknowledging its liability.

We think it an open question whether Drennan's acts as agent of the defendant were voidable, under the evidence in the case. See 48 Wis., 420.

*Calhoun & Green*, for appellee.

In view of the dual relation of Drennan, the policy was voidable at the election of the insurer. 1 Biddle on Insurance, § 497; Story on Agency, 239; Ostrander on Insurance, 97–100; 11 Am. & Eng. Enc. L., 335; 1 *Ib.*, 380; *Insurance Co.* v. *Myers*, 55 Miss., 479.

The submission to arbitration cannot estop the insurance company. It distinctly stipulates that it does not waive any rights. Kimball, on learning the facts as to Drennan's relation to the appellant company, promptly wrote withdrawing from the agreement. There was not the semblance of acquiescence on its part. See *Insurance Association* v. *Matthews*, 65 Miss., 301.

*Miller, Smith & Hirsh*, on the same side.

A policy issued by the agent to himself is voidable. *Insurance Co.* v. *Insurance Co.*, 14 N. Y., 85; 6 Pick., 198; Story on Agency, § 211; Pailey on Agency, 33; 10 Ves., 381; 17 Barb., 132; Berryman's Digest, p. 1267; 56 Conn., 1, s.c. 7 Am. St. R., 272; Mechem on Agency, § 67.

Argued orally by *M. Green*, for appellee.

Whitfield, J., delivered the opinion of the court.

On the testimony in this record, carefully considered as a whole, the jury, if the case had been submitted to them, could not possibly have reached any reasonable conclusion other than that Drennan was a stockholder in the Greenwood Ice & Coal Company, and a director and the vice president thereof, at the

time he, as agent of the appellee, issued the policy sued on, insuring against loss by fire the plant of said Greenwood Coal & Ice Company. He thus occupied antagonistic positions, and, so situated as regarded the Greenwood Ice & Coal Company and the appellee, it is not to be tolerated that the appellee shall be bound by the policy thus issued. *Insurance Co.* v. *Myers*, 55 Miss., 479; 1 Biddle on Insurance, § 497; Mechem on Agency, § 67; 7 Am. St. R., note at p. 279 *et seq.; Insurance Co.* v. *Insurance Co.*, 14 N. Y., 85.

The action of Kimball in investigating the loss, and submitting the matter to appraisement, was no waiver of the right of the appellee to deny liability. The policy provides that "no appraisal shall be construed, under any circumstances, as evidence of the validity of said policy, or of the company's liability thereon." And the agreement for appraisal in this case stipulates that "it is for the purpose of ascertaining and fixing the amount of said loss and damage only . . . and shall not determine, waive or invalidate any other right of either party to said agreement;" and Kimball expressly refers to this reservation in his testimony. The case of *Insurance Co.* v. *Matthews*, 65 Miss., 301, is decisive of this point.

Nor can it be justly claimed that Kimball, for the company, waived the right of the company to deny liability on the ground that he was interested in the Greenwood Ice & Coal Company, as stockholder, director and vice president. The agreement, at page twenty-five of the record, is that "Kimball, on ascertaining certain facts, of which he was ignorant, wrote the Greenwood Ice & Coal Company the letter of March 6," withdrawing from the agreement to appraise the property. Kimball states that Keesler gave him the list of stockholders and officers of the company the day after he signed the appraisement agreement. Keesler says he did not recollect whether it was that day or not. Kimball testifies that the information on which he acted in writing the letter of March 6 was the knowledge obtained in Greenwood, but after he signed the agreement for appraisal, as to

Drennan's being such stockholder, director and vice president, and in part from the home office, from which he was informed "that the receipt of the daily report, three or four days after the fire, reached the home office by the same mail which brought the notice of loss." Mr. Brown and Mr. Coart testify that the home office got this daily report February 20. Allowing for the time of mail transit, shown to be about thirty hours between Greenwood and Columbus, Ga., and keeping in mind Kimball's uncontradicted statement as to acting in part on the information got from the home office, clearly after February 20, and looking to the date of the letter of March 6, no reasonable conclusion can be reached other than that Kimball's action was as prompt as the law, under the circumstances required, and did not have the effect of ratifying Drennan's action in issuing the policy.

We forbear a minute analysis of, or further comment on, the remarkable testimony in this record. It is enough to say that no verdict for plaintiff could have been allowed to stand, and the action of the court in granting the peremptory charge was eminently proper, and the judgment is

*Affirmed.*