ELLERY W. HARLAND, Respondent, v. THE LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, November 22, 1915.

1. FIRE INSURANCE: Principal and Agent: Agent Insuring His Own Property: Duty to Disclose all Facts to Company. A policy of insurance issued by an insurance agent upon his own goods without a full disclosure of all the facts to his principal is voidable at the option of the latter. An agent must serve the interests of his principal with the utmost fidelity and this rule applies to agents of insurance companies. In this case, as the principal's general agent had suggested to the agent that he insure his own property, and as the agent sent a copy of the policy to his principal and as no complaint was made on account of the agent's having insured himself, when the principal did know of it, but the complaint was on other grounds, there was ample evidence from which the trier of the fact could find that the principal was fully aware that the agent had insured himself. If, however, the agent did not make a full disclosure of all the facts concerning the value of the property insured, but insured it for more than three-fourths of its value in violation of section 7030, this would entitle the company to avoid the policy if it had placed itself in position to do so.

2. ————: ————: ————: ————: Voidable Policy: Retention of Premiums. An insurance company cannot claim, that a policy is void ab initio when, after knowing of the facts, it re-

tains the premiums paid thereon. To keep the premiums is to say the policy was in force and this is inconsistent with the claim that it was void from the beginning. The company will not be allowed to take such an inconsistent position. This rule arises out of the very nature of things and not by virtue of Sec. 6940, R. S. 1909, which applies only to life companies. Even with regard to them this statute did not require them to do something they did not have to do before its enactment.

3. ———: ———: ———: ———: ———: ———: Insuring for More Than Three-fourths Value. That the agent may have insured his property for more than three-fourths of its value in violation of Sec. 7030, R. S. 1909, does not change the situation, since the company, after discovering this fact, elected to regard the policy as being in force by keeping the premiums, money which it could hold only on the theory that the policy was valid. Section 7030 does not say the policy shall be void. It merely prevents the company from questioning the value. The company therefore, ratified the policy not only as to the agent himself being the insured, but also as to the amount of the insurance.

4. ———: ———: ———: ———: ———: ———. Doubtless the fact that the agent was *in pari delicto* with the company in the violation of section 7030 would prevent him from invoking the statute so as to fix the value of the goods lost at the face of the policy, but in this case he did not rely on said statute but offered evidence tending to show that the value of the goods lost was in excess of the face of the policy and of his recovery.

Appeal from Linn Circuit Court.—*Hon. Fred Lamb,* Judge.

AFFIRMED.

*Fyke & Snider* for appellant.

*C. M. Kendrick* for respondent.

TRIMBLE, J.—Suit on a policy of fire insurance for $900 on a stock of undertaker's goods. The case was tried before the court without a jury. Plaintiff recovered judgment for the amount of the policy and defendant appeals.

Defendant set up that the policy was void because of plaintiff's fraud in the matter of the issuance thereof and in having the goods insured for that amount.

Plaintiff was defendant's agent in the town of Bucklin. He bought the stock in controversy at administrator's sale for $425 or $450. He was one of the appraisers who had appraised the stock for the administrator, and this appraisement fixed the value thereof at $555.35. After purchasing the stock and adding thereto about $155 worth of goods and selling therefrom only one casket (price not shown), he, on May 26, issued to himself a policy of $900 on the stock. He did not inform the company that he had appraised the property, nor did he tell the company the amount of such appraisement nor the price he paid. He did, however, report to the company by sending the form of the policy to the company. In the policy plaintiff's name, as insured, was written "Ellery W. Harland" while his name, as countersigning agent, was written "E. W. Harland." This last was the name used in his appointment as agent and in the correspondence between him and defendant.

Defendant claims that it did not know plaintiff was insuring himself; and that good faith required that he not only disclose this fact but that he also disclose to the company the amount at which he had appraised the stock and the price he had paid therefor; that section 7030, Revised Statutes 1909, forbids the company insuring a stock for more than three-fourths of its value, and that plaintiff, being the agent of the company, was the one upon whom the company relied to determine the value and fix the amount of insurance in accordance with that value as the statute required; and that plaintiff not only failed in his duty aforesaid as an agent, but also violated section 7030 by insuring, for defendant, property at an amount nearly double what he should have insured it at.

Sometime before plaintiff took out the policy, one of defendant's general agents, who visited and also established agencies, suggested to plaintiff that he

ought to take out insurance on the stock, to take the insurance with defendant and he could thereby save the amount of his own commissions by writing his own policy. We think that this fact, coupled with the similarity of the two names in the copy of the policy sent defendant, together with the further fact that there was no evidence that defendant was misled by the fact that one name was ''Ellery W.'' and the other merely ''E. W.,'' amply supports the inference that the defendant did know that the two names were the same. The correspondence from the company after the fire, in reference to the claim, makes no complaint because the agent had insured himself, and this is an added circumstance tending to show that the company knew he had issued the policy to himself.

But defendant says the agent insured the property for $900 without telling his principal he had bought it for less or that he had, under oath, appraised it at much less; that section 7030, Revised Statutes 1909, forbids the insurance of property for more than three-fourths of its value, and, as he was the one whose duty it was to act for defendant in seeing that it was not insured for more than three-fourths of its value, he has violated said section and the policy is void on that account.

The evidence tends to show that plaintiff, at the time he talked with the agent above mentioned, showed him the stock, and the latter spent a half day or more looking at it and talking; that he, plaintiff, told him the stock invoiced at seven or eight hundred dollars but that he had bought it for less at administrator's sale. There was no evidence that it did not invoice at that figure nor that it was not worth $900. Indeed, there was testimony that the stock was, in reality, worth $1000 to $1100. Of course, these facts did not absolve plaintiff from his duty, as an agent, to make a full disclosure of what he did pay and all the facts concerning the stock. Doubtless he should have told just what

he paid for the stock and what he appraised it at, thereby supplying *all* the facts and circumstances necessary for defendant to know in deciding for itself whether it would accept the insurance or would accept it to the amount of $900. We do not mean to say that defendant was not entitled to avoid the policy because plaintiff made a partial disclosure of the facts sufficient to put defendant's general agent on his guard. It was plaintiff's duty to go further than this and make a full disclosure of all the facts. An agent must serve the interests of his principal with the utmost fidelity. [1 Mechem on Agency (2 Ed.), secs. 176-180 and secs. 1188-1191; 1 Clark & Skiles on Agency, secs. 404-406.] This rule applies to agents of insurance companies. And a policy issued by an agent to himself without a full disclosure of all the facts to his principal, is voidable at the option of the latter. [Mercantile Ins. Co. v. Hope Ins. Co., 8 Mo. App. 408; Wilberger v. Hartford Ins. Co., 72 Miss. 558; Arispe Co. v. Capital Ins. Co., 133 Iowa, 272; Zimmerman v. Dwelling House Ins. Co., 110 Mich. 399; Greenwood Ice Co. v. Georgia Home Ins. Co., 72 Miss. 46; Ritt v. Washington Ins. Co., 41 Barb. 353; Rockford Ins. Co. v. Winfield, 57 Kan. 576; Phoenix Ins. Co. v. Hamilton, 110 Ga. 14; Ramspeck v. Pattillo, 104 Ga. 772; London Ins. Co. v. Turnbul, 86 Ky. 230; N. Y. Ins. Co. v. Pro. Ins. Co., 14 N. Y. 85.] Defendant was, therefore, entitled to avoid the policy if it had placed itself in a position to do so.

But the trouble is that defendant has not done this. It came into court claiming that the policy was void from the beginning; that it never did have any existence in law. And yet it never offered to return the $35.46 it received in premiums thereon nor any part thereof. If the policy never created any liability or risk against the defendant, then it was not, and is not, entitled to retain any premiums whatever. Therefore, in holding on to said premiums and making no

offer or move to return them, it is saying that the policy was in existence and in force. This is inconsistent with its claim that it was void from the beginning. It will not be allowed to take such an inconsistent position. This rule does not arise, however, by force of section 6940, Revised Statutes 1909, since that statute only applies to life, and not to fire, insurance companies. It arises out of the very nature of things. A company cannot insist that a contract had no existence whatever and at the same time hold on to property to which it has no right except on the theory that the contract did exist. Even with regard to life companies, section 6940 took away no material right they enjoyed prior to its enactment. [Kern v. American Legion of Honor, 167 Mo. 471, l. c. 488.] In other words, the statute did not require them to do something they did not have to do before its passage.

The fact that plaintiff may have insured the property for more than three-fourths of its value and thereby became a party to the violation of section 7030, Revised Statutes 1909, does not change the situation. Because defendant, after discovery of the facts showing that this was done, still held on to the premiums. In other words, defendant not only assented to the agent insuring himself, but, after learning that the property was insured for more than the statute allowed, elected to regard the policy as being in force by keeping money which it could hold only on the theory that the policy was valid. By so doing, the defendant assented to the policy not only as to the agent himself being the insured, but also as to the amount of the insurance, which last was, of course, an assent to the violation of said statute. The fact that the agent may be *in pari delicto* in the violation thereof or indeed may have been the one who brought about that violation, does not relieve defendant. This may be more clearly seen if we take the following illustration:    Suppose the defendant, after learning that its agent had insured his own prop-

erty for more than three-fourths of its value, had said to plaintiff, "yes we know all that but we are going to hang on to the premiums anyway." Could the company afterwards claim that the policy was void because the agent had violated the statute? Now, this is precisely what the company, in legal effect, did. The statute does not say the policy shall be void. Hence we say there is no room for declaring the policy void.

It should be noted that, in this case, plaintiff does not recover $900 merely by force of the last line of section 7030 which says the value of a risk "shall not be questioned." If he had, it would appear strange that plaintiff could demand the enforcement of the provision of a statute which he had himself violated. But he did not invoke that statute to fix for him the amount of recovery. And here is where the statement hereinbefore made as to there being evidence of the stock being worth $1000 or $1100 seems to be relevant. He offered testimony tending to show that the stock was worth more than what he insured it for. This was not disputed, unless it was by the inferences arising from the amount of his appraisement and from what he paid for it. It is well known that a stock of goods which is not in a going business is often not rated at its full value, nor will it sell at anything like what it is worth as a part of an active and live business when sold at administrator's sale. So that there was testimony tending to show that plaintiff's loss was as much as $900. And we have not the spectacle of a man insuring his property for more than it was worth and recovering the full value of his policy merely becaues a statute (which he himself had violated), says the face of the policy shall fix the amount of the value. We make this statement merely to show that plaintiff did not take such a bold and unconscionable position as to say he was entitled to recover more than his actual loss because the statute precluded an investigation into the question of loss although he himself had been the means of induc-

ing defendant to violate that section by insuring the property for more than three-fourths of its appraised value.

For the reasons hereinbefore given, the judgment is affirmed. All concur.