## PARKS v. SCHOELLKOPF CO. (No. 1803.)

(Court of Civil Appeals of Texas. Amarillo. April 27, 1921.)

1. Principal and agent ⬤═69(2) — Principal held entitled to secret profits made by corporation of which agent was principal officer and principal stockholder.

Where an agent entered into a contract to represent the principal in the sale of certain goods in a certain territory, without disclosing to principal that a corporation of which he was the principal stockholder and principal officer was to receive from manufacturer of such goods a certain per cent. on the goods ordered from manufacturer by the principal, the principal was entitled to recover from the agent the amount of the payments made to corporation by manufacturer, since the agent violated the duty of exercising good faith toward his principal, entitling the principal to the secret profits so made, and since the corporation, through the agent, as its principal officer, joined with the agent in the violation of such fiduciary relationship, and was therefore a joint tort-feasor.

2. Corporations ⬤═428(7) — Principal officer's knowledge imputable to corporation.

Principal officer's knowledge held imputable to corporation.

3. Contribution ⬤═5 — None between joint tort-feasors.

Usually there is no contribution between joint tort-feasors, and they are each jointly and severally liable for the entire damages.

4. Principal and agent ⬤═48 — Relationship fiduciary, requiring good faith on agent's part.

The relation of a principal and agent is fiduciary, requiring perfect loyalty, utmost good faith, strict integrity, and fair dealing on the part of the agent to his principal.

5. Principal and agent ⬤═69(1) — Agent cannot bind principal in matters in which agent has adverse interest.

In matters touching the agency, the agent cannot act so as to bind the principal where he has an adverse interest.

6. Principal and agent ⬤═70 — Agent cannot act for both buyer and seller.

An agent cannot act for both buyer and seller and recover commissions from both.

7. Principal and agent ⬤═69(2)—Principal entitled to secret profits, though not injured by agent's breach of authority.

The principal is entitled to the secret profits made by agent, even though principal would have been no better off if the agent strictly pursued his authority and was not in fact injured by the intervention of the agent for his own benefit.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by F. T. Parks against the Schoellkopf Company, in which the defendant brought a cross-action against plaintiff. Judgment for defendant, and plaintiff appeals. Affirmed.

Wm. H. Atwell, of Dallas, for appellant. Spence, Haven & Smithdeal, of Dallas, for appellee.

HUFF, C. J. F. T. Parks, appellant, sued the appellee Schoellkopf Company to recover a balance alleged to be due him on a salary contract and for a small remnant of goods, totalling $529. The appellee answered by general denial and by cross-petition. As the facts stated in the cross-action are substantially proven, we will set out the cross-petition:

"(1) That in the year 1916 the plaintiff (Parks) claimed to have individually a contract with the Batavia Company of Batavia, N. Y., a manufacturing concern, granting him the right to sell its products, comprising automobile tires or casings, and other automobile supplies and accessories, within the state of Texas, for a period ending December 31st of that year. He applied to defendants (Schoellkopf Company), proposing to enter its employ and give his personal service to the defendant in case the defendant and said Batavia Rubber Company should enter into a contract for the purchase, handling, and sale by the defendant of the said Batavia Rubber Company's products aforesaid within the states of Oklahoma, Arkansas, Louisiana, and Texas, stating that his contract with Batavia Rubber Company would be canceled. The defendant thereupon, in connection with plaintiff, entered into negotiations with said Batavia Rubber Company, looking towards the termination of plaintiff's said contract with it, and looking towards the execution of a contract between defendant and said Batavia Rubber Company, which should provide for defendant's becoming the distributor of the Batavia Company's products within said four states, in which event the plaintiff was to be employed in defendant's automobile tire department. These negotiations resulted in a contract between defendant and the said Batavia Rubber Company, evidenced by an instrument executed by the parties of date November 1, 1916, to continue in force until November 1, 1918, with the option and privilege of the defendant to continue the same for an additional period of not to exceed 10 years, upon certain conditions and under the terms of which the said Batavia Rubber Company constituted defendant its distributor within said four states, for the handling and sale of its automobile tires and accessories pertaining thereto, which products the Batavia Company agreed to ship upon order of the defend-

ant. The prices to be paid therefor by the defendant then to be the prices named in Batavia Company's price list dated June 28, 1916, with a trade discount from said list of 25 per cent. and 5 per cent., and an additional special discount of 1½ per cent., allowance for reshipment in territory, and a cash discount of 5 per cent. on settlement date. These prices, however, subject to change of Batavia Company without other notice than the sending out to defendant of new prices, and defendant, under said contract, was bound to make monthly cash settlement for all purchases from Batavia Company on or before the 15th day of each month. There are other provisions in said contract, but same are not necessary here to be set out, a true copy thereof being attached hereto as a part hereof, and marked Exhibit A.

"(2) The plaintiff was an active participant in the procuring by the defendant of this contract from Batavia Rubber Company, and was familiar with all its terms.

"(3) In anticipation of the execution of said contract, Exhibit A, the plaintiff and the defendant had also entered into a written contract, but which specially provided that same should become effective only in the event that the defendant and the said Batavia Rubber Company should execute a contract substantially in terms as was thereafter done, in which contract between plaintiff and the defendant, which is dated October 14, 1916, after reciting that: 'Whereas, plaintiff (Parks) then had a contract with Batavia Rubber Company, under which he had exclusive right and privilege to sell automobile tires or casings within the state of Texas for the period ending December 31, 1916, and which was contemplated that said contract should be surrendered by the parties thereto and a new and substantial similar contract entered into between defendant and said Batavia Rubber Company, for the handling and sale by defendant of said Batavia products for a period of not less than two years within the states of Texas, Arkansas, Oklahoma, and Louisiana: Therefore, subject to the surrender by Parks to the Batavia Rubber Company of his said contract with it, and subject to the execution of said new contract by the defendant and said Batavia Rubber Company, that the defendant company, by said contract of date October 14, 1916, employed the said Parks to solicit sales and take orders in behalf of defendant, and generally to represent it in the handling and taking of orders for and sales of Batavia automobile tires or casings and other Batavia products as may be handled by defendant under its contemplated contract with the Batavia Company. This contract of employment to continue during the life of the contract between defendant and Batavia Rubber Company, but not to exceed three years from November 1, 1916'—said employment contract recites that plaintiff shall give his entire time and personal attention and efforts and best service to the successful carrying on, promotion, and development of the sales of said Batavia products in behalf of defendant, and as it was contemplated that defendant might also handle other lines of like products in addition to said Batavia products, the contract provides that in such event Parks shall also, in like manner, solicit orders for such additional products under the terms of said contract, applicable, however, only to tires and tubes, and for his compensation for his personal service thus to be rendered to defendant, it contracted to pay him commissions on all sales of the aforesaid products made by the defendant to purchasers in the territory aforesaid, as follows: Four per cent. on all sales made at the maximum selling price of such products; 3 per cent. on all sales made at the medium selling prices of said products; and 2 per cent. on all sales made at the lowest selling price of said products, and the same commission as his compensation; were to be received by the said Parks under said contract upon all payments actually made to defendant on sale of consigned goods; that is, the products aforesaid, which might be placed by defendant upon consignment with consignees within the territory aforesaid; but said contract specially provides that the compensation of Parks for his said personal services during the first year of his said contract with defendant should not be less than $5,000, and with the further mutual agreement that Parks might draw and receive during said year the sum of $5,000 in equal monthly installments, beginning the 1st day of December, 1916. There are other provisions in said contract, which was duly executed and mutually delivered by plaintiff and defendant, not necessary here to be set out, but a true copy thereof is hereto attached, marked Exhibit B, as a part hereof, to which reference is made for all of its terms.

"(4) This contract, Exhibit B, became effective when the said contract between the defendant and the Batavia Rubber Company became effective, to wit, the 1st day of November, 1916, and said contract continued in force until during the spring of 1918, when the defendant, for good cause, as hereinafter set out, terminated its said employment contract with plaintiff for this:

"(5) That while under the terms of his employment contract the plaintiff (Parks) was under legal obligations to give his entire time, personal attention and efforts, and best service, to the promotion and development of defendant's said business in its automobile tire or casing department, and to be loyal to the defendant, his employer, whose money he was receiving from month to month, yet the plaintiff, during all the time he was in defendant's employ, secretly received 3½ per cent. discount upon amounts of all sales of Batavia products made by Batavia Rubber Company to the defendant, under the contract between them; that is, while the Batavia Rubber Company allowed the defendant only the above trade discounts, to wit, 25 per cent. and 5 per cent. and an additional special discount of 1½ per cent. from Batavia Company's list prices of its products, which, with plaintiff's knowledge, it had asserted to defendant were its utmost trade discounts allowed to any dealer, yet, by a secret agreement and arrangement with plaintiff and said Batavia Rubber Company, the latter allowed to plaintiff and paid or credited to him, or to his account, an additional 3½ per cent. discount upon all sales of Batavia products to defendant, under the contract between said companies, all without the knowledge or consent of the defendant, and thereby plaintiff, Parks, was enabled to and did pay a debt in a large amount which he owed to said Batavia

Rubber Company, or the amount of said discount was otherwise credited or paid to him, or to or for his benefit, without defendant's knowledge or consent, as this entire secret arrangement was studiously concealed by plaintiff and Batavia Rubber Company from this defendant."

(6) Under this paragraph, the appellee, as defendant, alleged that if it was mistaken with reference to the Batavia Rubber Company paying to Parks individually the amount above stated, that the discount was paid or credited to a purported corporation claimed by Parks to have been organized under the Texas laws, under the corporate name of F. T. Parks & Co., but of which he was practically the sole proprietor and manager, and in which he held the greater majority of the corporate stock, and that Parks claimed that his corporation was largely indebted to the Batavia Company, and that the debt was paid by the latter company crediting to and applying upon said indebtedness 3½ per cent. of all the amounts charged by the rubber company to defendant for its products purchased and paid for by the defendant under its said contract with the rubber company. If Parks did not directly receive such payment, he did indirectly receive the benefit therefrom, because, as aforesaid, he was substantially the sole owner and manager for the Parks Company, and which amount was applied as aforesaid, either directly or indirectly, to plaintiff's benefit, in the total sum of $5,844.67, and during all the time that this sum was received and applied for the benefit, directly or indirectly, of plaintiff, the defendant was buying and paying for Batavia products as above, alleged furnishing storage therefor, the force of traveling salesmen, and all other equipment for the sale thereof. By occasion of the premises, the plaintiff was receiving a secret advantage as aforesaid, upon the volume of said business done under the contract with the Batavia Company, and that he converted the said sum of $5,844.67 to his own use and benefit, contrary to his duties and obligations under his employment and contract with defendant, the defendant being entitled to all the benefits and advantages of the full discount allowed by Batavia Rubber Company upon the prices paid by defendant to Batavia Rubber Company for its products. He prays for judgment for the $5,844.67, with legal interest thereon.

The appellant, by way of amendment or of supplemental petition, answered as follows:

"(a) That he was ever loyal to defendant and its interests, and most diligent and earnest in the care and prosecution of all its business.

"(b) That it is not true that he received secretly 3½ per cent. discount from the amounts of sales of Batavia products made by Batavia Rubber Company to the defendant, but that during the life of the contract between Batavia Rubber Company and the F. T. Parks Company, a private corporation, in which this plaintiff owns stock, such corporation existing under and by virtue of the laws of the state of Texas, the defendant to make the said Batavia Rubber Company a contract to sell said Batavia Company's goods in certain territory, which included the state of Texas, which belonged to the said F. T. Parks Company, and thereupon the said Batavia Company agreed

to pay the F. T. Parks Company a lump sum of approximately $5,800, if it would relinquish its contract for the state of Texas, so that the Batavia Company could enter into a contract with the defendant for the said state. Such payment to be made not in a lump sum but by credit to the account of the said F. T. Parks Company at stated periods in amount equal to 3½ per cent. on the sales made by the said Batavia Company to the said defendant. The first offer being to pay the F. T. Parks Company in this way, such credit based on a 5 per cent. commission, but later, when an additional 1½ per cent. was given to the Schoellkopf Company, the credits to the F. T. Parks Company were made on a basis of 3½ per cent. instead of 5 per cent., and that when F. T. Parks released the said territory, the said Batavia Company thereupon entered into a contract with the defendant for said state of Texas, as is shown by Exhibit A, in defendant's first amended original answer, and this plaintiff never received a penny from the said Batavia Company for commission, or otherwise, after he became associated with the Schoellkopf Company.

"(c) That the F. T. Parks Company had continuing contracts which brought it betterments with and from the said Batavia Company was known to the defendant at the time defendant entered into its contract with this plaintiff, in at least some instances."

The trial court instructed the jury to return a verdict in favor of the defendant, appellee here, for the sum of $5,844.67, less the sum of $529.14, leaving a balance of $5,-313.53, with interest thereon at the rate of 6 per cent. per annum from October 10, 1919. The jury returned a verdict in accordance with the instruction of the court. As there is no issue with reference to the amount stated in the verdict of the jury, we presume the testimony was sufficient to show that the amount which appellee was authorized to recover and the amount credited was uncontroverted. The contracts declared upon by appellee in its cross-petition were introduced in evidence, and were in terms substantially as pleaded by the appellee in the cross-petition.

The facts show that the appellant, F. T. Parks, entered into a contract with the Batavia Company to handle their products in Texas; that he organized a corporation, F. T. Parks Company, the capital stock of which was $6,000; that he owned $4,480 of the shares, and one other party $1,500 and two other parties $10 each, and it would indicate that the contract between Parks and Batavia Company was placed in the corporation as part of its assets. Some time in 1916, the appellees wrote to the Batavia Company for a contract to distribute their goods within the territory then occupied by appellee with other lines of goods. This matter was referred to Parks, who at that time lived at San Antonio, Tex., the place of business of his corporation. He called upon the appellees with reference

(230 S.W.)

to their proposition, and after conference with them went to New York and visited the Batavia Company. Thereupon the Batavia Company wrote a letter to appellees, stating in effect that Mr. Parks called on them with reference to their proposition to become distributors in certain territory, notifying them that they had a contract with Mr. Parks for Texas, and if he should surrender his contract that they would enter into negotiations, notifying them also that Mr. Parks would call on appellees with reference to the matter. After this Parks did call, and it seems at that time entered into the contract set out in the answer with the appellee, reciting, as stated in the pleadings, that he had a contract with the Batavia Company; that if they were released and appellee and the Batavia Company should make a contract, then he would enter into the service of the appellee, as stipulated therein.

Mr. Parks testified by deposition:

"My company authorized me to release the Batavia people on those terms, upon my agreeing to account to my company for whatever I received as consideration for my company's releasing as aforesaid. Thereupon the Batavia people signed up an agreement with the saddlery company (Schoellkopf Co.) for a larger territory, specified above. As heretofore testified, as compensation, that I was to continue to receive from the Batavia Rubber Company, that is, commission that was to be paid me by that company on the business I did through the territory which had theretofore been mine, and which was subsequently negotiated to and taken over by the Schoellkopf Co. I was to receive a sum of money which was to be computed at 5 per cent. on the total business done by the saddlery company, not as a commission on the saddlery company's business, but as a consideration for my people's releasing its contract with the Batavia people. I did not receive any commission on said sales, but I received on behalf of my company a certain consideration, which was to be arrived at by computing 5 per cent. upon the total amount of the saddlery company's business with the Batavia Company. I did not personally receive any of this consideration. Under agreement with my company I was to account to it for this consideration. As a matter of fact, at the time that my company released the Batavia Company from the existing contract, my company was indebted to the Batavia Company, largely due to the fact that customers of my company were slow in making their payments during the drouth season which crippled so much business in my territory. My company's indebtedness was at all times guaranteed to the Batavia Company by responsible parties. The consideration thus received, estimated on a 5 per cent. basis, as aforesaid, was credited upon my company's indebtedness to the Batavia people and when these consideration payments ceased these payments to my company had just about canceled my company's indebtedness to the Batavia people, enough so that the Batavia Company balanced the books with my company, leaving no balance due from my company."

In answer to another interrogatory he testified:

"I am unable to testify how much the F. T. Parks Company owed the Batavia Rubber Company in the month of September, 1916, October, 1916, and November, 1916; how much I personally and individually owed the rubber company during the months just named. I am unable to answer this interrogatory any more fully than that at the end of my relation with the Schoellkopf Company the F. T. Parks Company's indebtedness to the Batavia Company had been considerably wiped off by a consideration received from the F. T. Parks Company, as more fully explained in my testimony. I was not personally liable for the indebtedness of the F. T. Parks Company to the rubber company, although this indebtedness was guaranteed by a responsible third party not related to me in any way. In answer to the query whether or not, in the late summer or early fall of 1916, I was negotiating with C. H. Schoellkopf Saddlery Company, looking towards the ending of my contract, or the F. T. Parks Company contract with the Batavia Rubber Company, and myself entering the employment of said Saddlery Company. I had various negotiations with the Batavia Company and the Schoellkopf Company, as very fully set out in my direct testimony. I did not start these negotiations with the saddlery company, but followed up an inquiry which they made to the Batavia Company, asking for the right to represent the Batavia Company in a certain territory, and which the Batavia Company turned over to me, inasmuch as a part of that territory which the saddlery company asked for included the territory which was covered by my contract with the Batavia Company. I did confer specially with Mr. J. Fred Schoellkopf with regard to all of the details of the said Schoellkopf Saddlery Company handling all of the tires, casing, etc., in certain states, including the state of Texas. I also specially discussed with him the wholesale price of the Batavia Company's products, and especially the discounts of the said Rubber Company's list price for its said products. I stated to him that I believed that, inasmuch as we were the pioneers in introducing the Batavia tires in a new field, that we had received the extreme trade discount, viz., 25 per cent., plus 5 per cent. discount, which discounts the Batavia Company later gave the saddlery company in its contract. I have already testified as to my being in communication with the Batavia Rubber Company during the time I was discussing the Schoellkopf contract and my trip to New York. While in Batavia, N. Y., I did confer with Mr. Berrien, vice president and acting manager of the Batavia Company. While in Batavia, N. Y., I did discuss with Mr. Berrien the same features of his proposed contract between his company and the saddlery company of Dallas, which I had discussed with Mr. J. Fred Schoellkopf, and also discussed the maximum trade discount which the said rubber company would allow us from their list price to the saddlery company. I stated to him explicitly that the discounts given to the F. T. Parks Company were the only discounts ever mentioned to me, and which I believe to be the maximum trade discount."

To a cross-interrogatory he made the following answer:

"In consideration of the F. T. Parks Company releasing the Batavia Company from their contract with F. T. Parks Company, the Batavia Company at first agreed to pay the F. T. Parks Company a sum of money to be computed at 5 per cent. of the gross sales to the saddlery company. This was not in the nature of a commission to the Parks Company, but was a consideration paid to the Parks Company for a release of its contract. After the letter of September 18th was sent, which included an offer to the saddlery company of the lowest trade discount of the Batavia Company to my knowledge, I later induced the Batavia Company, in consideration of the saddlery company's purchasing tires in full carload lots, thereby avoiding the necessity of smaller shipments in less than carload lots, at an increased cost to the Batavia Company, an extra 1½ per cent., and for the reasons just stated it was a matter of great surprise to me to find that the Parks Company had been penalized this 1½ per cent., being the increased commission to the saddlery company, and that the Parks Company was to receive payment as consideration for its release, based, not on the 5 per cent. originally agreed, but upon the basis of 5 per cent. minus the 1½, or viz., 3½ per cent. In this way, by diligence in behalf of the saddlery company, I caused the Parks Company a loss which it was obliged to sustain."

As we gather from the testimony as to the 5 per cent. or 3½ per cent. on the gross sales or orders by appellees under their contract with the Batavia Company, which was to be paid to Parks or his company, the agreement by Parks with the Batavia Company was made after he had signed the contract with appellee on October 14, 1916. The facts show that appellees, when they made their contract with appellant and their contract with the Batavia Company, did not know of the agreement of 5 per cent. or the 3½ per cent. on the gross sales to appellee, and did not know of that sum being placed to the credit of Parks, or his corporation, from such sales until about 18 months after appellant had been working for appellees.

We believe appellant's brief presents questions which may be considered under three heads: (1) That the evidence raised an issue of fact for the jury; (2) that the contract to pay a commission by the Batavia Company to F. T. Parks Company, was not such as to charge F. T. Parks individually, as receiving under his fiduciary relation with appellee, or at least only to the extent of the stock which he owned in the corporation; (3) that if the contract was made for the benefit of Parks individually, it was not such in law as would charge him as a trustee under his agency employment with appellee.

First, we think the evidence essential to the establishment of the rights of the parties is either admitted, pleaded, or undisputed, and presents no issue of fact for the jury, and only presents a question of law for the court's determination.

Whether Parks will be charged as a trustee under the contract with F. T. Parks Company, a corporation, will, in some measure, depend upon his interest in the corporation, together with his conduct in making the contract. The undisputed facts show the corporation's capital stock was $6,000. Of this amount Waddell subscribed $1,500, F. T. Parks, appellant, subscribed $4,480, Frazier $10, and Davis $10. Waddell and Davis paid cash. Parks and Frazier paid in property, consisting of a business conducted under the name of the Mileage Tire Company, dealers in automobile tires, etc., and a contract with the Batavia Rubber Company valued at $1,000. F. T. Parks was president and treasurer of the corporation. We think cases upon insurance policies issued to a corporation, in which the agent writing the policy is a director, officer, or stockholder therein, and who executed the insurance contract in the name of his principal, the insurance company, without disclosing his interest in the corporation to his principal, may afford an illustration of the interest of an agent which will charge him as a trustee in cases of this character. Salene v. Insurance Co., 59 Or. 297, 116 Pac. 1114, 35 L. R. A. (N. S.) 438, Ann. Cas. 1916D, 1276; Riverside v. Insurance Co., 105 Miss. 184, 62 South. 169, Ann. Cas. 1916D, 1274, and notes. We take it, as affecting the principle upon which this case must be determined, it will make no difference whether such contracts are absolutely void or only voidable, at the instance of the principal, the insurance company, as held by some of the courts. Harland v. Liverpool, 192 Mo. App. 198, 180 S. W. 998. Of course, if Parks' interest in the corporation was only nominal, and was not a real pecuniary interest, we do not think he could be charged as trustee, and such would seem to be the effect of the case cited by appellant. German Insurance Co. v. Melford Independent School District, 80 Fed. 366, 25 C. C. A. 492.

[1-3] It would appear that appellant entertains the view that, as Parks does not claim, or would not be entitled to, the entire profit going to his corporation, and that the other stockholders would be entitled to their share according to their stock therein, the court should not have charged him with the entire commission. In this case, Parks entered into a contract of agency with the knowledge that his company's interest in the contract between the Batavia Company and appellee was to be 5 per cent. on the goods ordered by appellee. He did not disclose this matter to his principal when he entered into the agency contract, when he should have done so, and if his acts were such as to charge him with the profits so made, that is, the profits so made were his principal's, then we think he should be charged for the whole

of the profits. In this case he negotiated, as president of his company, the contract with the Batavia Company, with knowledge that appellee was then under contract with him as its agent to give him employment in selling the goods in which he was to have an interest. He being the principal officer of his company in the transaction, his knowledge was the company's knowledge, and if, with such, the company sought to give to Parks profits which should go to appellee, it can recover nothing from them, or retain that which in law is the appellee's. If it joined with Parks in violating a fiduciary relationship, it is equally guilty with him, and it might be made liable upon such a wrong. Parks, at least, is in no position to state that his joint tort-feasor, who obtained the funds, should release him for any portion of the liability thus created. Usually, there is no contribution between joint tort-feasors and they are each jointly and severally liable for the entire damages; and we see no reason why they should not be held for the joint withholding of trust funds, or the conversion of them.

[4-6] The recognized rule is that—

"The relation of a principal and agent is fiduciary, requiring the most perfect loyalty and the utmost good faith, the strictest integrity and the fairest dealing, on the part of the agent to his principal." Hahl v. Kellogg, 42 Tex. Civ. App. 636, 94 S. W. 389; Rand v. Davis, 27 S. W. 939; Perry on Trusts, § 206.

In matters touching the agency, the agent cannot act so as to bind the principal where he has an adverse interest. Shannon v. Marmaduke, 14 Tex. 217. Equity will not permit him to be exposed to the temptation or brought into a situation where his own personal interests conflict with those of his principal, and with the duty he owes the latter. Boyd v. Jacobs, 6 Tex. Civ. App. 442, 25 S. W. 681; Satterthwaite v. Loomis, 81 Tex. 64, 16 S. W. 616. It is also well settled that an agent cannot act for both buyer and seller and recover commissions from both. Armstrong v. O'Brien, 83 Tex. 635, 19 S. W. 268.

"The well-settled and salutory principle that a person who undertakes to act for another shall not in the same matter act for himself, results also in the other rule that all profits made and advantage gained by the agent in the execution of the agency belong to the principal; and it matters not whether such profit or advantage be the result of the performance or the violation of the duty of the agent, if it be the fruits of the agency. If his duty be strictly performed, the resulting profit accrues to the principal, as the legitimate consequences of the relation. If profits accrue from his violation of a duty while executing the agency, that likewise belongs to the principal, not only because the principal has to assume the responsibility of the transaction, but also because the agent cannot be permitted to derive advantage from his own default. It is only by rigid adherence to this rule that all temptation can be removed from one in a fiduciary capacity to abuse his trust or seek his own advantage in the position which it affords him." 1 Mechem on Agency (2d Ed.) § 1224.

An agent cannot avail himself of his agency to do for his own benefit that which injures or affects his principal. Borden v. Houston, 2 Tex. 606, 607.

"The larger interests of public justice will not tolerate, under any circumstances, that a public official shall retain any profit or advantage which he may realize through the acquirement of an interest in conflict with his fidelity as an agent. If he takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust, and a breach of confidence, and he must account to his principal for all he has received." U. S. v. Carter, 217 U. S. 306, 30 Sup. Ct. 520, 54 L. Ed. 775, 776 (19 Ann. Cas. 594).

In that case the Supreme Court declares the above doctrine is established and applied in many relations of agency and trust. The above case also quotes from Leake on Contracts, 409:

"Any profits made by an agent in the execution of his agency must be accounted for to the principal, who may claim it as a debt for money received to his use. A gratuity given to an agent for the purpose of influencing the execution of his agency vitiates a contract subsequently made by him as being presumptively made under that interest, and a gratuity to an agent after the execution of the agency must be accounted for to his principal."

"In general, with respect to interest before the commencement of the agency, one will not be charged as a trustee, but such an interest may easily disqualify one from becoming an agent when such interest would conflict with the interest of the principal and the duty of disclosure may require that either interest or knowledge acquired before the commencement of the agency should be made known to the principal." 1 Mechem on Agency, § 1235.

As we understand the facts in this case, when appellant entered into the contract with the Batavia Company to pay him or his corporation 5 per cent. or 3½ per cent., he was under a written contract to serve the appellee in the sale of the very goods upon which he had a per cent. interest. We think when he made such contract a fiduciary relation existed between him and appellee, and the rule of the utmost good faith on the part of the agent then applied. He knew that his principal was desirous of obtaining the largest discount possible from the Batavia Company. He must have known if that company paid him the 5 per cent. upon the sale of the goods to appellee that it would not again discount that amount to appellee. As we view the matter, it will make no material difference whether appellant called the 5 per cent. a consideration or compensation for an agree-

ment, to surrender his contract with the Batavia Company for the state of Texas, or a discount or a commission received by him or his company, the result is the same—the appellee paid that sum in the price of the goods sold under the contract. It is altogether improbable that appellee would have entered into a contract with the Batavia Company to sell its goods, to take orders therefor, or to purchase the same upon a discount privilege with the knowledge that its agent should also receive 5 per cent. upon the gross orders or sales. This arrangement entered into by appellant and the Batavia Company had the effect of vesting in the appellant or his corporation an interest in the contract for the purchase of the goods by the appellee, of which appellant had no knowledge. Securing the contract so made from appellee by the appellant and the Batavia Company was clearly a violation of the duty imposed to deal with appellee with the utmost good faith. These secret profits of the agent, growing out of the contract so made, and as part of the appellee's contract with the Batavia Company, by virtue of the fiduciary relation, belonged to appellee.

In addition to the above, by the appellant's contract with appellee, he was to represent appellee in the sale of other goods and solicit orders therefor of like kind other than those purchased from the Batavia Company. It is provided, however, this provision applied to tires and tubes only. The temptation would be to sell goods upon which he was receiving a per cent. from the Batavia Company, and to push such sales whether the interest of his principal was furthered or not. He owed absolute good faith and disinterested service to his principal. Equity does not tolerate a secret service to another for profit during such employment, which may or does influence the agent not to serve with scrupulous fidelity the interest of the principal. The appellant seems to think because he was entitled to compensation for giving up his contract with the Batavia Company, that it can make no difference from what source he procured it; if the Batavia Company was willing to pay it out of the price received from goods sold appellee that this would not, or should not, affect the matter. The arrangement did not do this, as will be seen upon analysis. His per cent. was based upon the contract between the other two parties and the sales made thereunder. He therefore had an interest in that contract and in its performance. It was a secret interest, and and doubtless was secret for the reason that he knew appellee would not enter into a contract with an agent with such a per cent. payable out of the goods purchased, and whose duty it was to make it a remunerative contract, and thereby increase the agent's earning. In fact, retaining an interest in the sales was in a sense an express violation of the contract entered into. The appellee would not accept a contract from the Batavia Company until the appellant surrendered his right as the distributor in Texas. The contract he made with the Batavia Company was to retain a 5 per cent. interest on sales in Texas by appellee, who had assumed all the risk and expense of which appellant was relieved, and receive in addition a per cent. from appellee upon such sales.

[7] It is insisted that through appellant's service great profits have accrued to appellee.

"It matters not how fair the conduct of the agent may have been in the particular case, nor that the principal would have been no better off if the agent had strictly pursued his authority, nor that the principal was not in fact injured by the intervention of the agent for his own benefit. The result is still the same." 1 Mechem on Agency, §§ 1225, 1199, 1207.

A failure to disclose the secret profit and the arrangement therefor when appellant entered into the agency agreement would, it seems to us, charge the agent as a trustee, as much so as if after the relation had ceased the agent acquired profits upon information obtained while the confidential relation existed. Under the latter case, it seems to be the rule that the principal may recover such profits. 1 Mechem on Agency, 1210; Trice v. Comstock, 121 Fed. 620, 57 C. C. A. 646, 61 L. R. A. 176.

We believe under the facts of this case the judgment of the trial court should be affirmed.